UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12-cv-839 |
| | ) | |
| | ) | |
| NATIONAL INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFF FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO SANCTION DEFENDANT NATIONAL INDEMNITY COMPANY

Plaintiff Ford Motor Company ("Ford"), by counsel states as follows in support of its

Motion to Sanction Defendant National Indemnity Company ("NICO"):

I.      INTRODUCTION

Ford seeks sanctions against NICO because NICO failed to comply with the Court's

Order of January 30, 2013 (Docket No. 27).  This Order required NICO to produce documents

relating to Resolute Management Ltd. and related entities (collectively "Resolute") to Ford by

February 13, 2013.  NICO, however, failed to do so.  Instead, NICO disobeyed the Court's Order

and dribbled-out Resolute documents in eight separate "supplemental" productions, spanning

April 29, 2013 to May 30, 2013, while Ford took depositions of key witnesses and prepared its

expert witness disclosures.  When NICO began producing Resolute documents on April 29 and

May 5, NICO immediately hampered Ford's ability to conduct further discovery by demanding a

claw back of many of the recently produced Resolute documents on May 6 and claiming

privilege over inadvertently disclosed documents.  As a result, Ford was forced to depose

Resolute and NICO's employees and Resolute's and NICO's Fed. R. Civ. P. 30(b)(6) designees

in London and New York and prepare expert witness disclosures without important Resolute

documents.[1]

NICO's conduct merits sanctions because NICO and its lawyers possessed the Resolute

documents long before entry of the Order on January 30, 2013.



Nevertheless, NICO refused to

produce the documents and even represented that it had complied with the Court's Order. *See*

Tr. of Conf. Call, 16:20-23 (Mar. 25, 2013) (Docket No. 50).

The Court granted Ford leave to file this motion to sanction NICO on May 9, 2013, and

again on May 30, 2013. *See* Order  (May 30, 2013) (Docket No. 88).  As a sanction for NICO's

failure to comply with the Order of January 30, 2013, Ford seeks full, un-redacted disclosure of

all Resolute documents from NICO's document productions after February 13, 2013.  The record

before the Court clearly establishes that NICO possessed many of the Resolute documents before

Ford served its discovery requests and that NICO waived any claim of privilege by ignoring the

deadline of February 13, 2013, and producing them to Ford.  To the extent that the Court is

willing to entertain NICO's untimely assertions of privilege, the circumstances surrounding most

of the documents fail to establish the facts necessary to support the asserted privileges – even if

---

[1]     NICO's failure to produce documents and late production of documents has also impaired
Ford's ability to conduct a discovery deposition of Scott Friedman of Mitigate on May 30, 2013.
NICO dumped as many as thirty documents on Ford's counsel on the morning of Mr. Friedman's
deposition, conditioning the production on Ford's acceptance of unconditional return of the
documents within seven (7) days if NICO demanded a claw back for any reason.

NICO had asserted those privileges in a timely and proper manner.  The majority of these "privileged" documents relate to business decisions that NICO, Resolute, and HDI-Gerling made during the conspiracy not to pay Ford for claims arising under the aggregate stop loss policies that Gerling issued and renewed in 1995-2000.  Many of these documents were created or received by NICO's Kevin Lewis, who performs dual business and legal roles as ███████

████████████████████████████████████████████████████████████████. *See* Ex. 2, e-mail from P. Shelley to A. Jain (Oct. 14, 2011 at 4:22 p.m.) (NICO466667).

Ford also seeks an award of its fees and costs incurred in obtaining this relief under Fed. R. Civ. P. 37(B).  Additionally, Ford seeks the opportunity to re-depose all witnesses for whom the wrongfully withheld emails were pertinent – at NICO's expense.  Ford also seeks an extension of its expert witness disclosure deadlines, without continuing the trial date.

During a hearing on May 29, 2013, the Court also granted Ford leave to seek sanctions for NICO's false statements in its responses to Ford's Interrogatory 5.  In essence, NICO, through Mr. Lewis, said that it did not process payments to Ford and was without sufficient information regarding payments to Ford under the Aggregate Stop Loss Policies to answer Ford' discovery.  Mr. Lewis's e-mails demonstrate the falsity of this response, and Ford asks that the Court direct NICO to re-verify interrogatory responses previously verified by Mr. Lewis using someone else, prohibit Mr. Lewis from verifying future interrogatory responses in this case, and present a jury instruction that Mr. Lewis has been found to have provided a false interrogatory response under oath.  Additionally, striking NICO's Sixth Affirmative Defense (agency) would be a narrowly-tailored specifically targeting this discovery misconduct.

## II.     CERTIFICATION OF COUNSEL

Ford certifies that it has in good faith conferred with NICO in an attempt to resolve this dispute without Court action.  Ford further states that the Court directed Ford to file a motion for sanctions during a telephone hearing on May 8, 2013, and in an Order dated May 30, 2013 (Docket No. 88).

## III.     STATEMENT OF FACT AND PROCEDURAL HISTORY

The following facts support Ford's motion for entry of an order sanctioning NICO.

### A.     The Resolute Documents

#### 1.     Ford Served Document Requests on NICO Seeking the Resolute Documents and Moved to Compel Production of Those Documents.

On December 7, 2012, Ford served discovery requests on NICO seeking documents relating to Resolute and its role in the conspiracy to harm Ford by not paying benefits under HDI-Gerling's aggregate stop loss insurance policies.  *See* Ex. 3, Plf. Ford Motor Co.'s First Reqs. for Prod. to Def. Nat. Indem. Co., Nos. 1-3, 5-7, 10, 15-16 (Dec. 7, 2012).  Ford included Resolute in its discovery requests because Resolute is a corporate affiliate of NICO which NICO engaged to evaluate and administer Ford's claims under the insurance policies and to perform run off duties pursuant to the Reinsurance Agreement between NICO and HDI-Gerling.

The following requests specifically sought documents relating to Resolute:

Request 1. All documents that refer to, relate to, or embody communications between NICO, Resolute, HDI-Gerling, Gerling, or any other Person regarding the Gerling Aggregate Stop Loss Policies or any claims asserted by Ford thereunder.

Request 5. All documents that refer to, relate to, or embody the policies, processes, or procedures used by NICO or Resolute to process, adjust, set reserves on,  pay and/or deny or decline to pay insurance claims, including any Gerling or HDI-Gerling policies, processes, or procedures adopted or used by NICO or Resolute.

> Request 15. All documents refer to, relate to, or embody any communication between NICO and/or Resolute and Mitigate Inc. or any of its employees or agents.

*Id.*

NICO objected to Ford's requests for production regarding Resolute on December 27, 2012.  *See* Ex. 4, Def. Nat. Indem. Co.'s Objs. to Plf. Ford Motor Co.'s First Reqs. for Prod (Dec. 27, 2012).  When NICO served its responses to Ford's document requests regarding Resolute on January 10, 2013, NICO stood on its objections and refused to produce any Resolute documents.  *See* Ex. 5, Def. Nat. Indem. Co.'s Resps. to Plf.'s First Reqs. for Prod. (Jan. 10, 2013).

Ford determined that NICO's objections to the requests for production were improper and that NICO's responses to the requests were insufficient.  After meeting and conferring with NICO failed to resolve the dispute, Ford filed a motion to compel and supporting memorandum of law on January 23, 2013.  *See* Plf. Ford Motor Co.'s Mot. to Compel (Jan. 23, 2013) (Docket No. 20); Plf. Ford Motor Co.'s Mem. in Supp. of Its Mot. to Compel (Jan. 23, 2013)(Docket No. 21 with exhibits at Docket Nos. 21-1 through 21-12).  NICO filed a brief opposing Ford's motion to compel on January 28, 2013, and Ford replied on January 29, 2013. *See* NICO's Mem. Of Law in Opp. (Jan. 28, 2013) (Docket No. 23); *see also* Plf. Ford Motor Co.' Mem. of Law in Reply (Jan. 29, 2013) (Docket No. 25 with exhibits at Docket Nos. 25-1 through 25-4).

### 2.    The Court Ordered NICO to Produce Resolute Documents.

The Court conducted a telephone hearing on January 29, 2013, on Ford's motion to compel and heard argument regarding NICO's objections to Ford's requests for production of documents relating to Resolute.  *See* Tr. of Conf. Call (Jan. 29, 2013) (Docket No. 62).  The Court entered an Order on January 30, 2013, sustaining Ford's motion to compel.  *See* Order

(Jan. 30, 2013) (Docket No. 27).  In the Order, the Court directed NICO to " produce the

documents sought in Ford's Request for Production No. 1, Ford's Request for Production No. 5;

Ford's Request for Production No. 13; Ford's Request for Production No. 15." *Id*. at 3.  The

Court ordered NICO to "file full and complete responses to the above-described discovery

requests" by February 8, 2013, and to provide "all documents requested for production in the

above-described Requests for Production" by February 13, 2013.  *Id*.

### 3. NICO Represented That It Complied with the Order to Produce Resolute Documents.

NICO produced documents to Ford in February, 2013, in Bates range NICO002287

through NICO173273.  Ford noted that documents relating to Resolute's "FWK" database

seemed to be missing from the production.  After the parties met and conferred, the Court

conducted another telephone conference call on March 25, 2013, to resolve dispute over

Resolute's "FWK" database and other discovery issues.  During the conference call with the

Court, NICO's counsel represented that NICO had collected documents from Resolute and

produced them:

> MR. LEVINE: Judge, the documents that were collected from Resolute are within
> the Bates range of NICO2287 through NICO173273.  Those are the documents,
> Judge, that were collected through the custodial search of the Resolute document
> custodians.

Tr. of Conf. Call, 16:20-23 (Mar. 25, 2013) (Docket No. 50).  In an Order dated March 27, 2013,

the Court observed that NICO had produced documents at NICO 2287 through NICO 173273

and noted that Ford would review those documents to see whether FWK documents were

contained within that Bates range.  Order, 1-2 (Mar. 27, 2013) (Docket No. 51).

### 4. NICO Produced Resolute Documents on April 29, 2013, Which Should Have Been Produced by February 13, 2013.

NICO produced 1,101 documents consisting of 6,365 pages on April 29, 2013, by

sending an e-mail to Ford's counsel and providing a link and password to a secure FTP website. Ex. 6, e-mail from C. Terrell to S. Oostdyk (Apr. 29, 2013 at 10:24 p.m.). These documents were marked with Bates numbers NICO431674 through NICO438038. No documents appear to have been withheld from the documents within this Bates range. These documents included materials from Resolute which had not previously been provided to Ford by NICO and which were responsive to the document requests that the Court ordered NICO to respond to in the Order of January 30, 2013, including but not limited to Ex. 7, NICO433781 (e-mail from S. Whitley to K. Nicholson (Jan. 23, 2009 at 7:17 a.m.)), Ex. 8, NICO433439-NICO433557 (e-mail from K. Nicholson to S. Whitley (Jan. 28, 2998 at 8:02 a.m.)), and Ex. 9, NICO433431 (e-mail from S. Whitley to W. Mudd (Dec. 13, 2009 at 14:54)).

### 5.     NICO's Document Production on May 5, 2013, Contained More Resolute Documents.

On May 5, 2013, NICO produced 2,967 documents to Ford within Bates range NICO438039 through NICO460296. As before, NICO produced the documents electronically by giving Ford a link and password to a secure FTP website. In the transmittal e-mail, NICO's counsel alerted Ford that this bates range contains "gaps for withheld documents (for which we will provide explanations separately)," suggesting that NICO withheld documents from the production on claims of some sort of privilege. Ex. 10, e-mail from C. Terrell to S. Oostdyk (May 5, 2013 at 10:45 a.m.). NICO withheld 2,177 pages of documents from the production of May 5 without contemporaneously providing a privilege log. Many of the documents produced on May 5 may have contained redactions.

The May 5 production contained many Resolute documents that should have been produced by NICO on or before February 13, 2013, per the Court's Order, or at the very least should have been listed on an appropriate privilege log. *See e.g.* Ex. 11, NICO443856-

NICO443857 (e-mail from S. Whitley to C. Reidel (Aug. 25, 2010 at 9:20 a.m.)).

> **6.** **NICO Seeks to "Claw Back" the Resolute Documents from the Document Production of May 5, 2013.**

NICO's counsel sent an e-mail to Ford's counsel on the afternoon of May 6, 2006, advising that the production of document on May 5, 2013, at Bates numbers NICO438039 through NICO460296 "contains a number of privileged documents" and that "NICO continues to assert all applicable privileges and protections and waives none" pertaining to the documents produced. Ex. 12, e-mail from C. Terrell to M. Fender (May 6, 2013 at 2:33 p.m.). NICO's counsel asked Ford's counsel to "delete any materials that Ford accessed through the May 5, 2013 FTP site production, destroy any paper copies of that material, and confirm that Ford has done so." (*Id.*).

Ford's counsel responded to NICO's request to destroy and delete the documents that were produced on May 5 by sequestering all documents from the April 29 and May 5 document productions per Fed. R. Civ. P. 26(b)(5)(B) and asking NICO to identify the particular documents subject to the claw back. Ford also challenged NICO's claims of privilege and was skeptical of any claims of privilege based on the involvement of John Yacoub because he testified in the arbitration that much of his work relating to Ford's claims has not been legal in nature. Ex. 13, 1-2, e-mail from M. Fender to C. Terrell (May 6, 2013, at 4:09 p.m.); Ex. 14, Tr. of Dep. of J. Yacoub, 29:6-30:16 (Dec. 7, 2012). Ford also noted NICO's failure to produce or identify the documents as required by the Order of January 30, 2013, as likey waiver. Ex. 13. NICO's counsel then provided lists of Bates numbers for specific documents for claw back. Ex. 15, e-mail from C. Terrell to M. Fender (May 6, 2013, at 8:15 p.m.); Ex. 16, e-mail from C. Terrell to M. Fender (May 7, 2013 at 2:48 p.m.). Eventually, NICO's counsel "identified approximately 319 documents that were inadvertently produced" with the May 5 document

production.  Ex. 17, e-mail from G. Sibley to S. Oostdyk (May 8, 2013 at 8:19 p.m.).

NICO modified its claw back claims on May 8, 2013.  NICO abandoned its claw back request for 217 documents that "contained information regarding other policyholders or reinsurance/reserve information that is the subject of our pending motion for protective order."  *Id*. at 1.  NICO claimed that 102 documents from the May 5 document production were privileged or protected and susceptible to claw back.  *Id*.  NICO provided a log which identified 102 documents by Bates number, format, privilege asserted, and "privilege justification."  Ex. 18, NICO's Claw Back Log.

NICO again retreated from its claw-back position on the evening of Friday, May 17, 2013, when it provided Ford with a formal privilege log.  Ex. 19, letter from M. Levine to S. Oostdyk (May 17, 2013) (attaching privilege log); Ex. 20, NICO's Privilege Log (May 17, 2013).  In a letter accompanying the privilege log, NICO announced that "upon further reflection," it was withdrawing its privilege claims over twenty-four (24) documents and producing them under different Bates numbers with a "confidential" designation.  Ex. 19, 2.  NICO also indicated that it would produce ten (10) privileged documents in redacted form with new bates numbers and completely withhold sixty-eight (68) documents.  *Id*.  NICO stated that fifty-five documents were at issue for claw back during a hearing on May 29, 2013, but sought to claw back the Brad Rosen e-mail in the middle of that hearing.  *See* Ex. 1.

### 7.    Ford Has Been Unfairly Prejudiced by NICO's Untimely Production of Resolute Documents and Claw Back.

NICO's late production of the Resolute documents and the sequester of those documents pursuant to Fed. R. Civ. P. 26(b)(5)(B) has interfered with Ford's deposition examination of witnesses and disclosure of expert witnesses.  Ford deposed Steve Whitley and Julia Price of Resolute on May 9 and 10, 2013, in London, U.K.  Mr. Whitley and Ms. Price are NICO's

claims handling personnel, and their names appear repeatedly in the recent Resolute document productions, but NICO's claw back thwarted Ford from using those documents in depositions.

Similarly, the parties scheduled the deposition of Kevin D. Lewis for May 17 and 20, 2013. Among other things, Mr. Lewis is assistant vice president and assistant general counsel at NICO. Ex. 21, Tr. of Dep. of K. Lewis, 33:25-34:12 (May 17, 2013). Despite Mr. Lewis' legal title, he wields considerable authority in the reinsurance business ███████████████████████ ██████████████████████████████████████████████████████████ ████████████ *Id*. at 94:16-96:9. According to one colleague at Berkshire Hathaway, ███ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████ Ex. 2 at NICO 466667.

The name "Kevin Lewis" appears repeatedly in NICO's privilege log entries for the documents that were clawed back, and Mr. Lewis's involvement in e-mail exchanges other correspondence has been offered a basis for privilege claims. *See* Ex. 20, NICO443745-NICO443746; NICO443750-NICO443753; NICO443867- NICO443871; NICO453270; NICO453792-NICO453793; NICO454743-NICO454744; NICO455214. Ford has been forced to examine Mr. Lewis without the full array of his Resolute correspondence, which likely contains information relating to NICO and Resolute's reinsurance business as opposed to NICO's legal interests.

### 8. Resolute's Employee Testified That NICO's Attorneys Collected Documents from Resolute in Fall 2011 and March or April 2013.

On May 9, 2013, Steve Whitley revealed that NICO had failed to comply with the Court's Order of January 30, 2013. ███████████████████████████████████████ █████████████████████████████████████████████████. *See* Ex. 22, Tr. of Dep.

of S. Whitley, 5:19-6:16; 117:6-9 (May 9, 2013).  He also testified ███████████████

██████████████████████████████████████████████.  *Id.* at 79:13-88:5.

Mr. Whitley ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

### 9.    The Court Directed Ford to File This Motion to Develop a Full Record.

The Court conducted a telephone conference on May 9, 2013, regarding NICO's

untimely production of Resolute documents and the claw-back demand.  During this conference

call, NICO's counsel acknowledged that NICO had produced Resolute documents after the

February 13, 2013, deadline but suggested that Ford somehow acquiesced to NICO's failure to

produce the Resolute documents notwithstanding Ford's pursuit of the FWK database that

resulted in a telephone conference with the Court on March 25, 2013.  *See* Tr. of Conf. Call,

11:24-12:9; 23:8-18; 27:7-16 (May 9, 2013) (Docket No. 66).  NICO's counsel stated that "in

early March, we went back to the Resolute database because we became concerned that we had

not captured everything, that the documents produced in the arbitration were not the full set"

even though a different attorney for NICO told the Court on March 25, 2013, that Bates range

NICO2287 through NICO173273 included the documents that "were collected through the

custodial search of the Resolute document custodians" without mentioning any concerns that

NICO's production might be incomplete.  *Compare id.* at 18:12-15 (Docket No. 66) *with* Tr. of

Conf. Call, 16:20-23 (Mar. 25, 2013) (Docket No. 50).

The Court directed Ford to file an appropriate motion so that the Court could develop a

full record to rule upon when considering the issues.  *See* Tr. of Conf. Call, 11:24-12:9; 23:8-18;

27:7-16 (May 9, 2013) (Docket No. 66).  The Court also instructed NICO to place all documents

subject to the claw-back request into a note book for in camera submission, along with a one or

two page explanation of the privilege claims for each document.

### B.    Kevin Lewis Verified a False Answer to Interrogatory 5.

Ford served Interrogatory No. 5 on NICO on December 7, 2012, seeking information

about NICO's authorization of payments to Ford for single-occurrence products liability claims

under the Gerling Aggregate Stop Loss Policies. Ex. 23. Plf. Ford Motor Co.'s First Interrogs. to

Def. NICO (Dec. 7, 2013).[2]  NICO answered Interrogatory 5 as follows:

> **INTERROGATORY NO. 5:**  If your answer to Ford's Request for Admission
> number 22 is anything but an unqualified admission, state all single occurrence
> product liability claims that were submitted by Ford to Gerling/HDI-Gerling for
> payment and authorized for payment by NICO under the Gerling Aggregate Stop
> Loss Policies and had never been declared by Ford to its batch carriers.
>
> **RESPONSE:** NICO does not approve payment under the Gerling Policies.
> Rather, payment is approved by Resolute which, as defined by Ford in its First Set
> of Interrogatories, is a separate and distinct entity that is not a party to this
> litigation.  NICO, therefore, is without information sufficient to respond to this
> interrogatory.

Ex. 25, Def. NICO's Resps. to Plf. Ford Motor Co.'s First Interrogs. (Jan. 10, 2013).  Kevin

---

[2]     Ford simultaneously served Request for Admission 22, which asks NICO to
"[a]dmit that NICO declined to approve for payment in the years 2007-2012 even one of
the single-occurrence products liability claims that were submitted by Ford to
Gerling/HDI-Gerling under the Gerling Aggregate Stop Loss Policies and had never been
declared by Ford to its batch carrier." Ex. 24, Plf. Ford Motor Co.'s First Requests for
Admission to Def. NICO (Dec. 7, 2012);

Lewis verified NICO's original answer to Interrogatory 5 on January 10, 2013.  *Id.* [3]

Recently produced Resolute documents and deposition testimony from Mr. Lewis show that NICO's response to Interrogatory 5 was false and call into question the truth of Mr. Lewis's verifications.  Mr. Lewis testified that ███████████████████████████████ █████████████████████████████████████ Ex. 21, 94:16-96:9.  Moreover, he is ██████ ████████████████████████████████████████████████. *See* Ex. 2, e-mail from P. Shelley to A. Jain (Oct. 14, 2011 at 4:22 p.m.) (NICO 466667).  Documents produced by NICO on May 24, 2013, show ██████████████████. *See* Ex. 26, e-mail from S. Whitely to K. Lewis to S. Whitley (Oct. 8, 2010, at 15:19) (NIC0468923).  As shown by an e-mail from Mr. Lewis that NICO introduced at the hearing on May 29, 2013, payments to Ford flowed through NICO's home office in Omaha, Nebraska.  Ex. 27. E-mail from K. Lewis to M. Mailander (Dec. 10, 2010 at 12:09 p.m.).

## IV.  ARGUMENT

The Court should sanction NICO on the following grounds.

### A.  Sanctions Are Proper under Fed. R. Civ. P. 37(b)(2) because NICO Failed to Obey This Court's Discovery Order.

Fed. R. Civ. P. 37(b) authorizes a court to issue sanctions for failure to obey a discovery order.  *SunTrust Bank v. Nik*, No. 1:11cv343, 2012 U.S. Dist. LEXIS 54718, 6-7 (E.D. Va. Mar. 22, 2012).  Indeed, the Court has "nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failure to comply with its discovery orders."  *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996).  When a party fails to obey a court's

---

[3]    Mr. Lewis also verified supplemental answers to Interrogatory 5 on February 8, 2013, and April 24, 2013.  *See* Def. NICO's Supp. Resps. to Plf. Ford Motor Co.'s First Interrogs. (Feb. 8, 2013); Def. NICO's Supp. Resps. to Plf. Ford Motor Co.'s First Interrogs. (Feb. 8, 2013).

previously entered discovery order, the court may, in its discretion, "issue further just orders" sanctioning the offending part and require payment of fees and costs.  Fed. R. Civ. P. 37(b)(2).  The propriety of the underlying discovery sought is not an issue because the court has already ruled upon it.  *See Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D.Pa. 1993).  Instead, the existence of an order, the failure to comply with it, and the propriety of sanction are all that matter.

There can be no dispute that there was a discovery order in place directing NICO to produce Resolute documents and that NICO failed to obey it.  The Court's Order of January 30, 2013, identified specific discovery requests for NICO to answer and set a date certain of February 13, 2013, for compliance.  *See* Order, 3 (Jan. 30, 2013) (Docket No. 27).  Nor is there any dispute that NICO produced Resolute documents on April 29, 2013, and May 5, 2013.  Given the scope of Ford's Requests 1, 5, and 15, there can be no serious argument that the documents from the April 29 and May 5 document productions were not responsive to those requests.  *See* Ex. 7 (e-mail from S. Whitley to K. Nicholson (Jan. 23, 2009 at 7:17 a.m.)); Ex. 8, (e-mail from K. Nicholson to S. Whitley (Jan. 28, 2008 at 8:02 a.m.); Ex. 9, (e-mail from S. Whitley to W. Mudd (Dec. 13, 2009 at 14:54).  NICO had not previously produced or disclosed many of these documents to Ford on a privilege log even though many of these documents are dated 2011 or earlier and were likely collected by NICO's counsel, Quinn Emmanuel, when Quinn Emmanuel conducted the document sweep of Resolute in 2011.  Additionally, NICO's privilege log shows that many of the documents that it seeks to claw back from Ford are also dated 2011 or earlier and would have been collected by Quinn Emmanuel during its 2011 document collection of Resolute.  *See e.g.* Ex. 20, at NICO433673-NICO433675 (Aug. 1, 2008); NICO437962-NICO437964 (July 19, 2007); NICO443745-NICO443746 (Feb. 3, 2010);

NICO443750-NICO443753 (Mar. 12, 2010); NICO443858-NICO443860 (Aug. 17, 2010);

NICO443861-NICO443862 (Sept. 22, 2010); NICO443867-NICO443871 (Oct. 1, 2010);

NICO453266-NICO453267 (Mar. 10, 2011).

There is no excusable reason why NICO failed to produce the Resolute documents on the

date established by the Court's order.  These are not subsequently discovered materials that have

been disclosed in a supplemental production.  Mr. Whitley ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. Ex. 22, 79:13-96:7.

████████████████████████████████████████████████████████

███████████████████████████████████ *See* Ex.  1.  ██████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 22, 88:6-89:7; 113:1-

114:3.  Thus, two scenarios are possible, both of which merit sanctions: that NICO had already

collected the recently produce Resolute documents in 2011 but failed to review, produce or

identify them by February 13, 2013, or that NICO did not collect or review the Resolute

documents until after the deadline.

**B.    Waiver and Failure to Obey a Court Order Defeat NICO's Claw-Back.**

NICO produced scores of Resolute documents to Ford on April 29, 2013, and May 5,

2013, but demanded the return of the documents on May 6.  NICO contends that these

documents were "inadvertently produced" and that they should be returned because they are

subject to the attorney-client privilege and/or the work-product doctrine.  Ford, however,

disputes that the privileges asserted actually apply to the claw back documents and submits that

NICO waived any protection by failing to assert such privileges in a timely manner and by producing the documents to Ford in a conscious and deliberate manner.

      1.      **NICO's Untimely Assertion of Attorney-Client Privilege and the Work-Product Doctrine Waived Protection for the Claw Back Documents.**

Waiver is the key issue when analyzing NICO's claims of attorney client privilege and work-product protection for the Resolute documents that are the subject of the "claw back" demand.  As a party resisting discovery on privilege grounds, NICO had a duty to assert privilege claims in a timely manner or risk waiving those protections through undue delay. Federal courts across the country have found waiver when a party claims attorney-client privilege and work-product protection after undue delay.  *See Pensacola Firefighters Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.RD. 589 (N.D. Fla. 2010); *see also Essex Ins. Co. v. Interstate Fire & Safety Equipment Co., Inc./Interstate Fire & Safety Cleaning Co.*, Inc., 263 F.R.D. 72 (D. Conn. 2009).  Such a waiver has occurred in this case as a result of NICO's undue delay in disclosing the Resolute documents, and Ford asks the Court to direct NICO to produce unredacted versions of those documents as a consequence.

The record shows that NICO waived its privilege and work-product claims for the claw back documents through undue delay.  Ford requested the documents on December 7, 2012, and the Court ordered NICO to produce the Resolute documents by February 13, 2013.  NICO did not identify the documents as privileged until May 6, 2013, or provide a log describing the documents until May 9, 2013.  Moreover, Mr. Whitley has testified █████████████████

██████████████████████████████████████████████████

██████████████████████████████████ Ex. 22, 79:13-96:7.  E-mails from

NICO's counsel suggest an even earlier collection occurred.  *See* Ex. 1.  Consequently, if any of

the Resolute documents that NICO claims as protected were among the documents that Quinn

Emmanuel collected in 2011, those documents should have been identified by NICO on a

satisfactory privilege log by February 13, 2013, if not before.  *See Fid. Nat'l Title Ins. Co. v.

Captiva Lake Invs., LLC*, No. 4:10 CV 1890 (CEJ), 2012 U.S. Dist. LEXIS 116206, at *9 (E.D.

Mo. Aug. 17, 2012) (recognizing that a "party waives the attorney-client privilege and work-

product protection when it fails to give notice in its privilege log that a document is being

withheld based on a privilege or protection as required.").

> **2.      NICO Waived Any Privilege over the Resolute Documents by
>          Producing Them to Ford on May 5, 2013.**

The voluntary production of a privileged document to another party also waives claims of

privilege.  *See Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 718 (E.D. Va. 2010).

Although NICO seeks to excuse its production of the claw back documents as inadvertent under

Fed. R. Evid. 502(b), the circumstances surrounding their disclosure show that the production

was so deliberate and intentional that it constitutes a waiver of the attorney-client privilege, the

work product doctrine, and the common interest protection.

Pursuant to Fed. R. Evid. 502(b), disclosure of privileged materials will not operate as a

waiver if the disclosure was inadvertent, the holder of the privilege or protection took reasonable

steps to prevent disclosure, and the holder promptly took legal steps to rectify the error.  To

determine whether an inadvertent disclosure waives a privilege, courts consider the

reasonableness of the precautions to prevent disclosure, the time taken to rectify the error, the

scope of the discovery, the extent of the disclosure, and the overriding issue of fairness.

*Francisco*, 756 F. Supp. 2d at 718 (citing *New Bank of New England v. Marine Midland Realty

Corp.*, 138 F.R.D. 479, 482 (E.D. Va. 1991)).  The burden of proving inadvertent disclosure is on

the party asserting the privilege. *In re: Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 417-19, (N.D. Ill. 2006), supplemented by, 432 F.Supp.2d 794 (N.D. Ill. 2006).

First and foremost, NICO must establish that the disclosure of the claw back documents was inadvertent. *Datel Holdings Ltd, v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872, *7-*8 (N.D. Cal. Mar. 11, 2011). To be inadvertent, the disclosure of a document must occur as the result of an accidental oversight or a careless, unintentional act. *ePlus, Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 254 (E.D. Va. 2012) (citing *McCafferty's Inc. v. Bank of Glen Burnie*, No. MJG-96-3656, 1998 U.S. Dist. LEXIS 12861 (Apr. 23, 1998). Here, the circumstances of the production and the volume of allegedly-protected documents produced establish that NICO's production of the claw back documents was not inadvertent. NICO's disclosure of the Resolute documents was part of a deliberate and planned document production on May 5, 2013. The documents were not simply loose papers that got caught in the shuffle and hastily stuffed into the wrong envelope. Instead, NICO's counsel has explained that an army of attorneys reviewed, analyzed, coded, and processed NICO's document productions in this case. *See* Tr. of Conf. Call, 20:21-24 (May 9, 2013) (Docket No. 66) ("We had six full-time lawyers, three from Hunton & Williams, three from Quinn Emanual [*sic*], and 30 contract reviewers going through stuff to make sure we had caught everything.") The documents in question were assigned bates numbers, loaded to an FTP website, and produced to Ford in digital format on Sunday, May 5, 2013, as part of a set of 2,967 documents. When NICO produced the documents, NICO's counsel's e-mail message noted that gaps in the bates ranges represented "withheld documents," suggesting that those documents had not been produced on claims of privilege. Ford's counsel detected 2,177 pages missing from the document production on May 5, 2013, suggesting that NICO was indeed withholding those documents on claims of privilege. As

18

NICO's 176-page privilege log suggests, NICO knows how to avoid producing documents on claims of privilege.

Even if NICO's disclosure of the Resolute documents was inadvertent, NICO's production of the documents waives any privilege claims.  The Court has already recognized that the Resolute documents are within the proper scope of discovery in the Order of January 30, 2013.  While NICO may argue that it took reasonable precautions to prevent disclosure and acted promptly to claw-back the documents, such arguments ignore the likelihood that NICO's counsel collected the documents in 2011 but failed to claim privilege over them before the deadline of February 13, 2013, or did not bother to collected the documents until March or April of 2013, well after the deadline established by the Court.  NICO also faces a stiff challenge in accounting for the large volume of the documents that were inadvertently produced on May 5 – at one time claimed to be 319 documents (or 10% of the 2,967 documents produced) by NICO – but eventually whittled down to double-digits through tactical concessions.  *See Inhalation Plastics, Inc. v. Medex Cardio Pulmonary, Inc.*, No. 2:07 CV 116, 2012 U.S. Dist. LEXIS 121830, at *12 (S.D. Ohio Aug. 28, 2012) (finding that a 4.6 % error was "relatively high"); *see also Ergo Licensing LLC v. Carefusion* 303, Inc., 263 F.R.D. 40, 47 (D. Me. 2009) (noting that a 6% error rate "may be some evidence of waiver").

### 3.     NICO's Subsequent Document Productions Waived the Claimed Privileges for Many of the Resolute Documents.

#### a.     NICO Abandoned Its Privilege Objections Regarding E-mails with John Yacoub.

NICO currently claims privilege over several documents subject to claw back because those documents include communications with John Yacoub.  *See* Ex. 20, listing documents NICO437962-NICO437964; NICO443858-NICO443860; NICO443867-NICO443871;

NICO446586-NICO446587; NICO446588-NICO446590; NICO446667; NICO446668-NICO446669; NICO446670-NICO446671; NICO446713-NICO446722; NICO446723-NICO446733.  On May 17, 2013, however, NICO withdrew claims of privilege involving similar communications between Mr. Yacoub and Resolute employees regarding legal advice on reserves and analysis policy coverage positions.  *See* Ex. 19, 3.  NICO gave these e-mails new Bates numbers and produced them on May 17 at NICO466384 (formerly NICO446573) and NICO466424-NICO466425 (formerly NICO455516-NICO455517).  *See* Ex. 28, e-mail from S. Whitley to J. Yacoub (July 25, 2008 at 11:46 a.m.) (NICO466384); Ex. 29, e-mail from S. Whitley to J. Yacoub (June 27, 2008 at 11:46) (NICO4466424- NICO4466425).

NICO had previously withheld Ex. 28 because it was an "[e]-mail from Steve Whitley to John Yacoub, copying Katherine Nicholson, seeking advice and analysis regarding potential liability under the ASLP and reserves."  *See* Ex. 18 at NICO446573 (currently NICO466384).  Similarly, NICO had not produced Ex. 29 because it contained "legal advice on coverage issues related to the Buell-Wilson claim" and "analysis regarding the setting of reserves." Ex. 18 at NICO455516-NICO455517 (currently NICO466424-NICO466425).  By subsequently producing these documents, NICO has acknowledged that they are not properly subject to production under the attorney-client privilege or the work-product doctrine.  Based on the description in the privilege log, the claw back documents are so similar to those already produced that NICO has waived any right to assert a privilege.

> **b.      NICO Has Forsaken Privilege Objections Relating to Document Collections from Resolute.**

A number the Resolute documents are claimed as privileged by NICO because the documents relate to Quinn Emmanuel's collection of documents from Resolute, Resolute's litigation hold, and the use of outside vendors.  *See* Ex. 20, NICO453266-NICO453267;

NICO453268; NICO453269; NICO453270; NICO453762; NICO453763; NICO453764; NICO453765; NICO453766; NICO453767; NICO453769; NICO453771; NICO453772; NICO453774; NICO453768; NICO453776; NICO453777; NICO453790; NICO453791; NICO453792-NICO453793; NICO454718; NICO454743-NICO454744; NICO455085-NICO455109; NICO455214; NICO455515.  NICO, however, withdrew such privilege claims for similar documents on May 17, 2013, and consciously produced similar documents at new Bates ranges.  *See* Ex. 19, 2; Ex. 30, e-mail from P. Baines to S. Whitley (Dec. 8, 2010 at 10:15 a.m.) (NICO466417-NICO466419; formerly NICO447267-NICO447269); Ex. 31, Oliver Group Invoice (Sept. 30, 2011) (NICO466420; formerly NICO451218); Ex. 32, Oliver Group Invoice (Feb. 28, 2011) (NICO466421-NICO466422; formerly NICO453271- NICO453272).  NICO had previously withheld these documents as privileged because they related to the arbitration between HDI-Gerling and Ford, constituted a "detailed invoice from document collection service provider," and detailed "services provided by data collection vendor, selected by and supervised by counsel, working at the direction of counsel."  *See* Ex. 18 at NICO447267-NICO447269 (currently NICO466417-NICO466419); NICO451218 (currently NICO466421).  Additionally, on May 24, 2013, NICO produced an e-mail from Brad Rosen of Quinn Emmanuel that appears to outline NICO and HDI-Gerling's document collection strategy from 2011.  *See* Ex. 1. Because the withheld documents cover the same subject matter as the documents that NICO has now produced, Ford asserts that the May 17 production waived any privilege as to the documents remaining under NICO's claw back.

### C. NICO Must Establish That the Resolute Documents Are Protected from Disclosure by the Privileges Asserted.

In the event that the Court entertains NICO's privilege claims, NICO must establish that

those protections apply to the documents in question. *Hawkins v. Stables*, 148 F.3d 379, 383

(4th Cir. 1998). The Fourth Circuit construes the attorney-client privilege and work-product

doctrine "quite narrowly" because these protections "remove otherwise pertinent information

from the fact finder, thereby impeding the full and free discovery of the truth." *Rambus, Inc. v.*

*Infineon Techs. AG*, 220 F.R.D. 264, 271 (E.D. Va. 2004). Courts recognize privileges "only to

the very limited extent that ... excluding relevant evidence has a public good transcending the

normally predominant principle of utilizing all rational means for ascertaining truth." *Id.*

(quoting *Hawkins v. Stables*, 148 F.3d at 383.

The party asserting a privilege has the burden of showing that it applies. *ePlus, Inc.*, 289

F.R.D. 447. Among other things, the party asserting attorney-client privilege must establish that:

> (2) the person to whom the communication was made...act[ed] as a lawyer [in
> connection with the communication];
> (3) the communication relates to a fact of which the attorney was informed (a) by
> his client (b) without the presence of strangers (c) for the purpose of securing
> primarily (i) an opinion on law or (ii) legal services or (iii) assistance in some
> legal proceeding... [and]
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d at 383. To assert the work product doctrine, the party claiming

protection must establish that the document at issue was prepared by, or at the direction of, an

attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947).

Because "common interest" and "joint defense" privileges are extensions of the attorney-

client privilege and the work-product doctrine, NICO must establish the applicability of the

underlying attorney-client privilege and/or work-product protection. *Adair v. EQT Production*

*Co.*, No. 1:10cv00037, 2012 U.S. Dist. LEXIS 89403, *8 (W.D. Va. June 28, 2012). NICO must

also establish an agreement or a meeting of the minds with other participants with the same

common interest. *See Hunton & William v. DOJ*, 590 F.3d 272, 285-287 (4th Cir. 2010)

(addressing common interest in context of Freedom of Information Act litigation).  Mere "indicia of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed."  *American Management Services LLC v. Dept. of the Army*, 703 F.3d 724, 733 (4th Cir. 2013) (citing *Hunton & William*, 590 F.3d at 285).  Documents disclosed to others before a common interest agreement is established or after the agreement has lapsed are not protected from disclosure.  *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005).

    **1.**    **The Attorney-Client Privilege Does Not Protect Any of the Resolute Documents Which Relate Primarily to Business Advice.**

Many of NICO's privilege claims are based on Kevin Lewis and John Yacoub's participation or inclusion in e-mail communications.  Although these men are in-house counsel at NICO and HDI-Gerling respectively, their duties involve a great deal of non-legal decision-making and substantive business activity.  While communications with an in-house lawyer may be privileged under *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981), the privilege does not protect business advice.  *Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 380 (W.D. Va. 2012).  For the attorney-client privilege to apply, "the client's confidential communication 'must be for the primary purpose of soliciting legal, rather than business, advice.'"  *Henson v. Wyeth Labs, Inc.*, 118 F.R.D. 584, 587 (W.D. Va. 1987) (quoting *N.C. Elec. Membership Corp. v. Carolina Power*, 110 F.R.D. 511, 514 (M.D.N.C. 1986)).  Consequently, NICO must show that the communications were primarily for legal, and not business, purposes, to assert that the attorney-client privilege protects Mr. Lewis or Mr. Yacoub's documents from disclosure.

Though an in-house lawyer at NICO, Mr. Lewis advises NICO and Resolute employees on insurance and reinsurance business matters, such as claims decisions.  Ex. 21, 29:4-30:17.  He makes major business decisions under the Reinsurance Agreement – he decides ███████████

23

███████████████████████████████████████████. *Id.*, 94:16-
96:9; *see* Ex. 33, letter from K. Lewis to S. Oostdyk (April 2, 2013).  Mr. Lewis is "████████
████████████████████████████████████████████████
████████████████████████████ Ex. 2.

    Mr. Lewis and his co-workers do not clearly distinguish between his function as an in-
house lawyer and a reinsurance business executive.  As Mr. Lewis puts it, ████████████
███████████████████████████████████████████████████

█████████ Ex. 21, 35:24-36:4; *see also* 35:20-36:5.  Steve Whitely and Julia Price from
Resolute are such people, and their names appear next to Mr. Lewis's on NICO's privilege log.
As Mr. Lewis notes, ████████████████████████████████████████

██████████████████████████████████████." *Id.* at 37:10-14.  Mr. Lewis

████████████████████████████████████████████████

████████████████████████. *Id.* at 36:20-37:6.  ████████████████████

████████████████████████████████████████████████

███████████████████████████████████." *Id.* at 36:5-12; 37:20-38:6.

████████████████████████████████████████████████

██████████████████████. *Id.* at 38:12-40:12.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

    Mr. Yacoub of HDI-Gerling is another dual purpose employee who, though a lawyer, has
testified that ██████████████████████████████████████████████. *See*
Ex. 14, 29:6-30:16.  According to Mr. Lewis ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████. Ex. 21, 124:25-125:18.  NICO's withdrawal of privilege objections and production

Mr. Yacoub's e-mails on May 17 reveals that there is no clear line distinguishing claims

monitoring from legal advice, and Ford submits that the attorney-client privilege does not apply

to the documents remaining on NICO's privilege log that have been clawed back.

## 2. No Work-Product Protection Exists for Any Document Created in the Ordinary Course of Business.

NICO must make a similar showing of a litigation-related purpose to prevail on claims

work-product protection.  Although the work-product doctrine protects documents prepared in

anticipation of litigation, it does not apply to "[m]aterials prepared in the ordinary course of

business or pursuant to regulatory requirements or for other non-litigation purposes." *Solis v.*

*Food Emp'rs Labor Relations Ass'n.*, 644 F.3d 221, 232 (4th Cir. 2011) (quotation omitted).

Indeed, "a party bears a heavier burden when seeking work-product protection for a multi-

purpose document." *United States v. ISS Marine Servs., Inc.*, No. 12-481, 2012 U.S. Dist.

LEXIS 166088, at *34 (D.D.C. Nov. 21, 2012).

Courts in the Fourth Circuit use the "because of" standard when applying the work-

product doctrine to dual-purpose documents to "determine the 'driving force' behind the

preparation" of a document.  *See RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747–48

(E.D. Va. 2007).  Consequently, a dual-purpose document only receives work-product protection

when "(1) the [party] faces an actual claim or a potential claim following an actual event or

series of events that reasonably could result in litigation, and (2) the work product would not

have been prepared in substantially similar form but for the prospect of that litigation." *RLI Ins.*

*Co.*, 477 F. Supp. 2d at 748 (internal quotations omitted).  Thus, NICO bears the burden of

demonstrating the driving force behind the preparation of each document.  In light of the

testimony from Mr. Lewis and Mr. Yacoub and the documents produced by NICO on May 17,

most of the claw-back documents appear to have been created for business purposes such as

running the insurance claims and administering NICO's reinsurance business rather than because

of litigation.

### 3.    There Is No Common Interest Protection without a Meeting of the Minds.

NICO must prove that a common interest or joint defense agreement actually existed, that

each participant was in agreement, and that the common interest was in effect at the time

question.  NICO has produced documents suggesting that at least one participant in the alleged

common interest group did not agree with NICO's strategy, thereby destroying NICO's claim of

common interest or joint defense privilege.

Although NICO claims that Swiss Re was a participant in the common interest agreement

that allegedly protects certain documents from disclosure, Swiss Re disagreed with NICO's

scheme to deny Ford's claims under the aggregate stop loss policies through arbitration.  *See* Ex.

20 at NICO437962-NICO437964 (listing clemens_reidel@swissre.com as a recipient of Kent

Wilson's e-mail regarding an audit of Ford's Stop Loss Aggregate Report).  In an e-mail dated

January 21, 2011, Clemens Reidel of Swiss Re notified Resolute that "until further notice we

generally reserve our rights under the reinsurance treaty, respectively all relevant reinsurances

treaties, and under the law" because Swiss Re doubted the merits of NICO and HDI-Gerling's

coverage positions on "expected or intended" and "Exclusion L" and opposed the "the high

expense that is going to be incurred for the arbitration, espy. cost for discovery and counsel

fees."  *See* Ex. 34, e-mail from C. Reidel to N. Watson (Jan. 21, 2011 at 17:27) (NICO443904-

NICO443910 at NICO443906).  Under such circumstances, there can be no common interest,

and such disagreement undermines other claims of common interest or joint defense for other

claw back documents.  *See* Ex. 20 at NICO433673-NICO433675: NICO437962-NICO437964;

NICO443745-NICO443746; NICO443750-NICO443753; NICO443858-NICO443860;

NICO443861-NICO443862; NICO446588-NICO446590.

     **D.**     **NICO's False Answer to Interrogatory 5 and Kevin Lewis's Verification**
                 **Merit Sanctions.**

Given the history of discovery disputes in this case and NICO's failure to comply with

the Order of January 30, 2013, sanctions are appropriate for NICO's false original response to

Interrogatory 5.  Fed. R. Civ. P. 33(b)(3) requires that "each interrogatory, to the extent it is not

objected to, be answered separately and fully in writing under oath."  When parties provide

evasive or incomplete responses to interrogatories, they are subject to the Court's discretion to

compel responses and sanction the failure to provide discovery.  Fed. R. Civ.  37.  More

importantly, though, federal courts possess inherent powers to "levy sanctions in response to

abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980); *United

States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993); *Suntrust Mortgage, Inc. v. AIG

United Gaur. Corp.*, No. 3:09cv529, 2011 U.S. Dist. LEXIS 33118 at *13 (E.D. Va. Mar. 29,

2011).  Under the court's inherent powers, sanctions are generally imposed when a party acted in

bad faith or with deliberate misconduct, when there is prejudice to the moving party, and there is

a need for deterrence.  *See, e.g., Zaczek v. Fauquier Co.*, 764 F.Supp. 1071, 1078-79 (E.D.Va.

1991) (Payne, J.).

The circumstances of the present case justify imposition of sanctions under the Court's

inherent powers.  NICO's original answer to Interrogatory 5 was demonstrably false, and it was

verified under oath by a man who clearly knew better.  Kevin Lewis is ███████████████████

█████████████████████████████████████████████████████████████.  In

light of Mr. Lewis's unique position and specialized knowledge, the statements that "NICO does

not approve payment under the Gerling Policies" and that NICO "is without information

sufficient to respond to this interrogatory" must have been made deliberately and intentionally.

Moreover, Mr. Lewis testified that he serves as an assistant vice-president and assistant general

counsel for NICO, making the claim that "payment is approved by Resolute" conflicts with the

processing of payments through NICO in Omaha.  *See* Ex. 27.  Ford has been prejudiced by

NICO's false discovery response – it has been forced to seek relief from the Court on more than

one occasion to obtain complete responses to Interrogatory 5.  Finally, NICO's conduct must be

deterred.  NICO has already violated the Court's Order to produce the Resolute documents by

February 13, 2013.  Ignoring a deliberately false interrogatory answer would only invite further

discovery misconduct by NICO.

As a sanction, Ford asks that Court direct NICO to re-verify interrogatory responses

previously verified by Mr. Lewis using someone else, prohibit Mr. Lewis from verifying future

interrogatory responses in this case, and present a jury instruction that Mr. Lewis has been found

to have provided a false interrogatory response under oath.  Striking NICO's Sixth Affirmative

Defense (agency) would also be appropriate because NICO responded to Interrogatory 5 by

raising questions of corporate structure and misrepresenting NICO's role under the Reinsurance

Agreement.  NICO's Sixth Affirmative Defense – that NICO is the agent of HDI-Gerling and

therefore cannot conspire or tortiously interfere with HDI-Gerling's contracts – depends upon

NICO's ability to confuse the issues of corporate relationships and contractual duties.  *See Fox v.*

*Deese*, 362 S.E.2d 699, 708 (Va. 1987).  NICO's initial response to Interrogatory 5 sought to

avoid inquiry into NICO's payment decisions and financial motivation for making those

decisions.  NICO's untimely Resolute document productions suggest a motivation for self-

dealing ████████████████████████████ which could undermine NICO's

agency defense and explain why NICO wanted hide its role in payment decisions.  *See* Ex. 11;

*State Farm Mut. Auto. Ins. Co. v. Floyd*, 235 Va. 136, 366 S.E.2d 93, 97 (Va. 1988) (noting that

no fiduciary relationship exists if the alleged fiduciary has the right to protect his own interests

pursuant to a contract.)  Consequently, striking NICO's Sixth Affirmative Defense would be

appropriate and narrowly tailored.

## V.      CONCLUSION

For the reasons stated above, Ford moves this Court to sanction NICO and award Ford its

fees and costs incurred in obtaining this relief pursuant to Fed. R. Civ. P. 37(b).

Dated: May 31, 2013                           Respectfully Submitted,


                                              _____/s/_____

                                              Scott C. Oostdyk (VSB#28512)
                                              soostdyk@mcguirewoods.com

                                              J. Tracy Walker (VSB#31355)
                                              twalker@mcguirewoods.com

                                              H. Carter Redd (VSB#34392)
                                              hredd@mcguirewoods.com

                                              Matthew D. Fender (VSB# 76717)
                                              mfender@mcguirewoods.com

                                              McGuireWoods LLP
                                              One James Center
                                              901 E. Cary St.
                                              Richmond, VA 23219
                                              Tel: (804) 775-1000
                                              Fax: (804) 775-1061

                                              *Counsel for Ford Motor Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 31, 2013, I filed the foregoing on the Court's CM/ECF system

which will cause a Notice of Electronic Filing (NEF) to be sent to the following counsel of

record for National Indemnity Company:

> George P. Sibley, III
> Hunton & Williams LLP
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Richmond, Virginia 23219-4074
>
> Michael S. Levine, Esq.
> Hunton & Williams LLP
> 1751 Pinnacle Drive, Suite 1700
> McLean, Virginia  22102
> Tel: (703) 714-7602
> Fax: (703) 918-4050
> E-mail: mlevine@hunton.com

                                        ___/s/_____
                                        Counsel

48317212_2