# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| FORD MOTOR COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 3:12-cv-839 |
| | ) |
| | ) |
| NATIONAL INDEMNITY COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

---

## PLAINTIFF FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCLOSURE OF FIFTY-FIVE NON-PRIVILEGED DOCUMENTS

Plaintiff Ford Motor Company ("Ford"), by counsel, states as follows in support of its Motion to Compel Disclosure of Fifty-Five Non-Privileged Documents:

## I.    INTRODUCTION

Ford asks the Court to compel the production of non-privileged documents strategically withheld by the National Indemnity Company ("NICO") under claims of privilege.  These documents are contained within the binder of fifty-five (55) "claw back" documents provided by NICO to the Court for *in camera* review.[1]  Based on a review of the privilege log, many of these documents are not privileged nor protected from disclosure by any other doctrine.  *See* Ex. 1, Privileged Documents Subject to Claw Back Request (May 24, 2013).  Specifically, several

---

[1]    In addition to the fifty-five documents that have been submitted for *in camera review*, the Court may wish to consider NICO's privilege claims regarding an e-mail that NICO sought to claw back during the hearing on May 29, 2013.  *See* e-mail from B. Rosen to S. Whitley (Feb. 28, 2011).  The Court has placed the e-mail under seal pursuant to an Order dated May 30, 2013 (Docket No. 88).

emails reflect discussions of business decisions, not legal advice, and for other documents, NICO attempts to assert privilege on behalf of third parties and entities with whom it does not have a common interest.  Even if this Court were to find these documents privileged, NICO has waived its privilege by selectively disclosing particular categories of documents and by producing them *after* the deadline set by the Court's January 30 Order.  NICO cannot hide relevant but unfavorable documents behind a façade of privilege while strategically disclosing other, similar documents that contain non-damaging information.  The Court should compel the production of these documents.

NICO's late production the Resolute documents, strategic claw back, and tactical retreat are symptomatic of a pattern of NICO's abusive discovery practices in this litigation.  NICO delayed disclosure of the Resolute documents until shortly before depositions were to begin and then clawed a significant portion of those documents back, preventing Ford from using them to examine key witnesses in deposition.  This forced the re-deposition of Resolute, now to take place the week of June 11, 2013.  Such conduct occurred again on Friday, May 31, 2013, when Ford took the deposition of Scott Friedman of Mitigate.  NICO previously withheld documents relating to Friedman by claiming that he was a lawyer representing NICO and asserting privilege.  When this argument failed, NICO claimed a common interest privilege.  After determining that NICO might very well be precluded from using those documents, based on open communication, NICO produced the documents on the day of Mr. Friedman's deposition, hamstringing Ford's counsel's examination of Mr. Friedman.  This Court has previously established that such obfuscatory behavior will not be tolerated, s*ee Rambus, Inc. v. Infineon Techs. AG*, 155 F. Supp. 2d 668, 681-682 (E.D. Va. 2001), and has warned NICO on several previous occasions that this Court does not "operate" that way.

2

## II.     CERTIFICATION OF COUNSEL

Ford certifies that it has in good faith conferred with NICO in an attempt to resolve this dispute without Court action.

## III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

A detailed statement of facts and procedural history of NICO's multiple untimely document productions is contained in Ford Motor Company's Memorandum of Law in Support of Its Motion to Sanction Defendant National Indemnity Company (Dkt. No. 97), which Ford incorporates herein by reference.  In brief, on December 7, 2012, Ford served discovery requests on NICO seeking documents relating to Resolute and its role in the conspiracy to harm Ford by not paying benefits under HDI-Gerling's aggregate stop loss insurance policies.  *See* Ex. 2, Plf. Ford Motor Co.'s First Reqs. for Prod. to Def. Nat. Indem. Co., Nos. 1-3, 5-7, 10, 15-16 (Dec. 7, 2012).  Ford included Resolute in its discovery requests because Resolute is a corporate affiliate of NICO which NICO engaged to evaluate and administer Ford's claims under the insurance policies and to perform run off duties pursuant to the Reinsurance Agreement between NICO and HDI-Gerling.

NICO objected to Ford's requests for production regarding Resolute on December 27, 2012 and later refused to produce any Resolute documents.  *See* Ex. 3, Def. Nat. Indem. Co.'s Objs. to Plf. Ford Motor Co.'s First Reqs. for Prod (Dec. 27, 2012); Ex. 4, Def. Nat. Indem. Co.'s Resps. To Plf.'s First Reqs. for Prod. (Jan. 10, 2013).  After a meeting with NICO failed to resolve the dispute, Ford filed on January 23, 2013 a motion to compel and a supporting memorandum of law.  *See* Plf. Ford Motor Co.'s Mot. to Compel (Jan. 23, 2013) (Dkt. Nos. 20, 21, 21-1 through 21-12).   NICO opposed. *See* NICO's Mem. of Law in Opp. (Jan. 28, 2013) (Docket No. 23).  On January 30, 2013, this Court ordered the disclosure of the requested

3

Resolute documents by February 13, 2013.  *See* Order (Jan. 30, 2013) (Dkt. No. 27)

In response to this Court's Order, NICO began producing Resolute documents *after* its court-ordered deadline to do so.  On April 29, 2013, NICO produced 1,101 documents consisting of 6,365 pages.  Ex. 5, e-mail from C. Terrell to S. Oostdyk (Apr. 29, 2013 at 10:24 p.m.).  These documents were marked with Bates numbers NICO431674 through NICO438038.  No documents appear to have been withheld from the documents within this Bates range.

On May 5, 2013, NICO produced 2,967 documents to Ford with Bates range NICO438039 through NICO460296.  In the transmittal e-mail, NICO's counsel alerted Ford that this Bates range contained "gaps for withheld documents (for which we will provide explanations separately)," suggesting that NICO affirmatively withheld documents from the production on claims of some sort of privilege.  Ex. 6, e-mail from C. Terrell to S. Oostdyk (May 5, 2013 at 10:45 a.m.).  NICO withheld 2,177 pages of documents from the production of May 5, and many of the documents produced on May 5 may have contained redactions.

NICO's counsel sent an e-mail to Ford's counsel on the afternoon of May 6, 2006, advising that the production of documents on May 5, 2013, at Bates numbers NICO438039 through NICO460296 "contains a number of privileged documents" and that "NICO continues to assert all applicable privileges and protections and waives none" pertaining to the documents produced.  Ex. 7, e-mail from C. Terrell to M. Fender (May 6, 2013 at 2:33 p.m.).  Ford's counsel responded to NICO's request to destroy and delete the documents that were produced on May 5 by sequestering all documents from the April 29 and May 5 document productions per Fed. R. Civ. P. 26(b)(5)(B) and asking NICO to identify the particular documents subject to the claw back.

NICO's counsel then provided lists of Bates numbers for specific documents for claw

back, at one point claiming privilege over as many as 319 inadvertently produced documents. Ex. 8, e-mail from G. Sibley to S. Oostdyk (May 8, 2013 at 8:19) (attaching Claw Back Log (attached hereto as Ex. 9)).  On May 8, 2013, NICO voluntarily withdrew its claw-back claims for documents that "contained information regarding other policyholders or reinsurance/reserve information that is the subject of our pending motion for protective order."  Ex. 8.  NICO reduced its claw back claims to 102 documents.  *Id.*

NICO once again retreated from its knee-jerk claw-back position on the evening of Friday, May 17, 2013, and provided Ford with a formal privilege log for the first time.  Ex. 10, letter from M. Levine to S. Oostdyk (May 17, 2013) (attaching privilege log); Ex. 11, NICO's Privilege Log (May 17, 2013).  It was not clear from that submission on how many of the 102 clawed-back documents NICO was still asserting claims.  It soon became apparent NICO had shrunk the pending list.  The Court had instructed NICO to place all documents subject to the claw-back request into a notebook for *in camera* submission, along with a one or two page explanation of the privilege claims for each document.  *See* Tr. of Conf. Call (May 9, 2013) (Dkt. No. 66).  NICO complied on May 24, 2013, by providing the Court with a notebook containing *fifty-five* documents that NICO maintains are protected from disclosure by the attorney-client privilege, work-product doctrine, and a common-interest or joint defense agreement. Thus, NICO has plummeted from 319 to 55 documents over which it claims inadvertent disclosure.

The record suggests that NICO and its lawyers possessed the claw back documents long before the Court's January 30, 2013 Order. ██████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████

## IV.    ARGUMENT

### A.    NICO Cannot Prove That Many Documents on Its Privilege Log Meet the Fourth Circuit Test for Privilege

Many documents listed on the "claw back" privilege log are not privileged and should be disclosed.   "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."   *Upjohn v. United States*, 449 U.S. 383, 389 (1981).  However, because its application interferes with "the truth seeking mission of the legal process," *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986), the Fourth Circuit "narrowly construe[s] the privilege, and recognize[s] it 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'"   *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 (4th Cir. 2005) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).   Accordingly, the privilege only applies to "confidential disclosures by a client to an attorney made in order to obtain legal assistance."   *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).   Furthermore, the "privilege has limits.   It does not shield from discovery the facts underlying the communication . . . and it may be waived."   *E.I. DuPont DeNemours and Co. v. Kolon Indus. Inc.*, 269 F.R.D. 600, 605 n. 2 (E.D.Va. 2010) (Payne, J.).

In the Fourth Circuit, the attorney-client privilege applies if *all* elements of the privilege test are met:  (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of

6

committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *In re Grand Jury Subpoena*, 415 F.3d at 339 n. 3 (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)).  "The burden is on the party asserting the privilege to demonstrate its applicability." *Jones*, 696 F.2d at 1072.

### 1. The Attorney-Client Privilege Does Not Protect Business Advice Provided by In-House Counsel

Courts review claims of privilege by in-house counsel with special vigilance.  While communications with an in-house lawyer may be privileged under *Upjohn Co.*, the privilege does not protect business advice.  *In re Grand Jury Subpoena*, 204 F.3d 516, 522-23 (4th Cir. 2000) ("The attorney-client privilege is not intended to permit 'an attorney conduct his client's business affairs in secret.' . . . A client may not buy a privilege by retaining an attorney to do something that a non-lawyer could do just as well."); *Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 380 (W.D. Va. 2012).  Moreover, "[c]ommunications are not privileged merely because one of the parties is any attorney."  *United States v. Cohen*, 303 F.Supp.2d 672, 684 (D.Md. 2003); *see also Scott & Stringfellow LLC v. AIG Comm. Equip. Fin.*, 2011 U.S. Dist. LEXIS 51028, *8-13 (E.D.Va. May 12, 2011) (analyzing various documents for their primary purpose and finding almost all documents not privileged, even those written by in-house counsel or on which counsel was copied).

To determine if a communication from in-house is privileged, the "confidential communication 'must be for the primary purpose of soliciting legal, rather than business, advice.'"  *Henson v. Wyeth Labs, Inc.*, 118 F.R.D. 584, 587 (W.D.Va. 1987); *see also Cohen*, 303 F.Supp.2d at 684 ("When the legal advice is merely incidental to the business advice, the privilege does not apply.").  To help determine a document's primary purpose, courts look at the content of the document as well as its context. *E.g., Cohen*, 303 F.Supp.2d at 685 (D.Md. 2003)

(analyzing whether document was privileged based on its content, reason for its creation, who had access to document, and whether non-legal personnel had ability to review communication). Consequently, NICO must show that the communications were primarily for legal and not business purposes to assert that the attorney-client privilege protects the documents of its in-house counsel.

Many of NICO's privilege claims are based on the participation or inclusion of Kevin Lewis and John Yacoub in e-mail communications. Although these men are in-house counsel at NICO and HDI-Gerling respectively, by their own admission, their duties involve predominantly non-legal decision-making and mostly involve substantive business activity. Though an in-house lawyer at NICO and Resolute – neither of which have legal departments – Mr. Lewis is also an assistant vice president of both NICO and Resolute. ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

Mr. Lewis and his co-workers do not clearly distinguish between his function as an in-

house lawyer and a reinsurance business executive. ███████████████████████

██████████████████████████████████████████████████

███████████   ████████████   ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ Given Mr. Lewis's dual role as a

decision-maker on reinsurance business issues and failure to segregate legal from business

advice, the attorney-client privilege cannot attach to the claw-back documents based on Mr.

Lewis's inclusion in those communications.

Because Mr. Lewis and others claim that Mr. Lewis acts as a claims agent for both NICO

and Resolute, both of which are insurance companies, and the work he does includes an express

business role as an officer of the company, documents in which Mr. Lewis is discussing Ford

claims matters, including discussions about whether or not to pay claims or how claims should

for both those reasons be reviewed with the presumption they are business communications and

are not privileged.  *E.g.,* Ex. 1, NICO443750 (at Tab 4) (content of email described as

"discussing analysis . . . of various coverage issues").  *See, e.g., In re Allen*, 106 F.3d 582, 602

(4th Cir. 1997) ("[N]o privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer. . . . "[t]o the extent" attorneys acted as claims adjusters, a "pure, ordinary business function," was their investigation "outside the scope of the asserted privileges."); *RLI Ins. Co. v. Conseco, Inc.*, 477 F.Supp.2d 741, 750-51 (E.D.Va. 2007) (Payne, J.) (holding that insurer did not meet burden of proving attorney-client privilege with its lawyer); *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D.Ind.1991) ("To the extent this attorney acted as a claims adjuster, claims process supervisor, or claim investigation monitor, and not as a legal advisor, the attorney-client privilege would not apply."); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D.Minn. 1986) ("To the extent that [the law firm] acted as claims adjusters, then, their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of plaintiff, outside the scope of the asserted privileges.")

Mr. Yacoub of HDI-Gerling is another dual purpose employee █████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ Thus like emails

involving Mr. Lewis, documents involving Mr. Yacoub – and especially those discussing claims issues – are not privileged.

Finally, a communication with in-house counsel, if privileged, must remain confidential. *See, e.g., EPlus Inc. v. Lawson Software Inc.*, 280 F.R.D. 247, 252-53 (E.D.Va. 2012) ("Communications within a corporation are only protected if the party claiming privilege can demonstrate that the persons to whom the communications were made had the 'need to know' the information communicated."); *Cohen*, 184 F.D.R. at 71 ("[W]hen the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost.").  Multiple emails on NICO's privilege log reflect communications between in-house counsel and numerous non-lawyers, and multiple emails are forwarded to non-lawyers, destroying the privilege.  *E.g.,* Ex. 1, NICO433675-433675 (Tab 1); NICO44386-443862 (Tab 6), NICO443867-443871 (Tab 7). NICO cannot prove that these communications are privileged because they are not confidential.

Ford believes that NICO's claim that documents involving Messr. Lewis and Yacoub are privileged is an attempt by NICO to hide damaging emails behind the attorney-client privilege. NICO's track record has been to do just that, as illustrated above.  NICO cannot disclose certain documents that are helpful to its defenses, but then hide other documents supportive of Ford's claims.  *See Jones*, 696 F.2d at 1072 (selective disclosure terminates privilege).  The Court should compel the disclosure of documents involving Kevin Lewis and John Yacoub.

### 2. No Work-Product Protection Exists for Any Document Created in the Ordinary Course of Business.

NICO must make a similar showing of a litigation-related purpose to prevail on claims of work-product protection.  Although the work-product doctrine protects documents prepared in anticipation of litigation, it does not apply to "[m]aterials prepared in the ordinary course of

11

business or pursuant to regulatory requirements or for other non-litigation purposes." *Solis v. Food Emp'rs Labor Relations Ass'n.*, 644 F.3d 221, 232 (4th Cir. 2011) (quotation omitted). Indeed, "a party bears a heavier burden when seeking work-product protection for a multi-purpose document." *United States v. ISS Marine Servs., Inc.*, No. 12-481, 2012 U.S. Dist. LEXIS 166088, at *34 (D.D.C. Nov. 21, 2012).

Courts in the Fourth Circuit use the "because of" standard when applying the work-product doctrine to dual-purpose documents to "determine the 'driving force' behind the preparation" of a document. *See RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747–48 (E.D. Va. 2007). Consequently, a dual-purpose document only receives work-product protection when "(1) the [party] faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation, and (2) the work product would not have been prepared in substantially similar form but for the prospect of that litigation." *RLI Ins. Co.*, 477 F. Supp. 2d at 748 (internal quotations omitted). Thus, NICO bears the burden of demonstrating the driving force behind the preparation of each document. In light of the testimony from Mr. Lewis and Mr. Yacoub and the documents produced by NICO on May 17, most of the claw-back documents appear to have been created for business purposes such as running the insurance claims and administering NICO's reinsurance business rather than because of litigation.

### 3.    There Is No Common Interest or Joint Defense Protection

NICO cannot demonstrate that the "common interest" documents are privileged. Because "common interest" and "joint defense" privileges are extensions of the attorney-client privilege and the work-product doctrine, NICO must initially establish the applicability of the underlying attorney-client privilege and/or work-product protection to document protected by the common

interest doctrine.   *Adair v. EQT Production Co.*, No. 1:10cv00037, 2012 U.S. Dist. LEXIS 89403, at *8 (W.D. Va. June 28, 2012).   NICO must also establish an agreement or a meeting of the minds with other participants with the same common *legal* interest.   *See Hunton & William v. DOJ*, 590 F.3d 272, 285-287 (4th Cir. 2010).   Mere "indicia of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *American Management Services LLC v. Dept. of the Army*, 703 F.3d 724, 733 (4th Cir. 2013) (citing *Hunton & William*, 590 F.3d at 285).   Documents disclosed to others before a common interest agreement is established or after the agreement has lapsed are not protected from disclosure.   *In re Grand jury Subpoena: Under Seal*, 415 F.3d at 341.

At the outset, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

NICO cannot meet the requirements necessary for a third-party document to be privileged under the common interest doctrine.   First, NICO cannot prove that NICO/HDI-Gerling had a common interest with Ford's other insurers. ███████████████████████████████████████████████████████████████████████████████████████████████████████████

 Because NICO cannot prove a common interest agreement, there is no common interest protection. *See Hunton & Williams*, 590 F.3d at 285 ("While agreement need not assume a particular form, an agreement there must be.").

Nor can NICO prove that any common interest between NICO/HDI-Gerling and Ford's other insurers was a common legal interest. *Neuberger Berman Real Estate Income Fund Inc. v. Lola Brown Trust*, 230 F.D.R. 398, 416 (D.Md. 2005) ("The common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern

about litigation.") (quoting *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.D.R. 437, 447 (S.D.N.Y. 1995)).  When NICO/HDI-Gerling communicated with Ford's insurers about Ford's claim submissions, the parties were simply united on how they  executed their business issues. Discussion of potential legal issues or potential litigation does not transform a common commercial interest agreement to an attorney-client privilege.  *Bank Brussels Lambert*, 160 F.D.R. at 448 ("While each member shared a concern about the threat of shareholder litigation, there is no evidence that they formulated a joint legal strategy to deal with the possibility.").

Furthermore, NICO cannot prove that documents pre-dating its reinsurance agreement with HDI-Gerling fall under the common interest doctrine, as NICO cannot demonstrate when or how it obtained these documents.  Documents disclosed to others before a common interest agreement is established are not protected from disclosure.  *In re Grand jury Subpoena: Under Seal*, 415 F.3d at 341.  If NICO received these documents during its pre-deal due diligence – when there was no common interest agreement between NICO and HDI-Gerling – then the documents cannot be privileged, as any privileged was waived by third-party disclosure.  *See, e.g.*, Ex. 1, Tabs 6-15; *see also Neuberger*, 230 F.D.R. at 416 (stating that that disclosure from one party to another must while the common interest agreement exists).   As NICO's counsel admits, ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████

Under such circumstances, there can be no common interest, and such disagreement

undermines other claims of common interest or joint defense for other claw back documents.

      **B.**      <u>Even if NICO Could Prove Privilege, That Protection Has Been Waived.</u>

NICO produced scores of Resolute documents to Ford in late April and throughout May 2013, but later demanded the return of only certain documents as "inadvertently produced." NICO originally asserted this claw-back privilege for over 300 documents, but now does so only for 55 documents. NICO cannot disclose certain documents, but not others, without waiving privilege.

      **1.**      **NICO's Untimely Assertion of Attorney-Client Privilege and the Work-Product Doctrine Waived Protection for the Claw Back Documents.**

As a party resisting discovery on privilege grounds, NICO had a duty to assert privilege claims in a timely manner or risk waiving those protections through undue delay. Federal courts across the country have found waiver when a party claims attorney-client privilege and work-product protection after undue delay. *See Pensacola Firefighters Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589 (N.D. Fla. 2010); *see also Essex Ins. Co. v. Interstate Fire & Safety Equipment Co., Inc./Interstate Fire & Safety Cleaning Co.*, Inc., 263 F.R.D. 72 (D. Conn. 2009).

The record shows that NICO waived its privilege and work-product claims for the claw-back documents through undue delay. Ford requested the documents on December 7, 2012, and the Court ordered NICO to produce the Resolute documents by February 13, 2013. NICO did not identify the documents as privileged until May 6, 2013, or provide a log describing the documents until May 8, 2013. ███████████████████████

████████████████████████████████████████

Consequently, if any of the documents that NICO claims are protected were among the

documents that Quinn Emmanuel collected in 2011, those documents should have been identified by NICO on a satisfactory privilege log by February 13, 2013, if not before.  *See Fid. Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, No. 4:10 CV 1890 (CEJ), 2012 U.S. Dist. LEXIS 116206, at *9 (E.D. Mo. Aug. 17, 2012) (recognizing that a "party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required.").

### 2.     NICO Waived Any Privilege over the Resolute Documents by Producing Them to Ford on May 5, 2013.

The voluntary production of a privileged document to another party also waives claims of privilege.  *See Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 718 (E.D. Va. 2010). Although NICO seeks to excuse its production of the claw-back documents as inadvertent under Fed. R. Evid. 502(b), the circumstances surrounding their disclosure show that the production was so deliberate and intentional that it constitutes a waiver of the attorney-client privilege and the work product doctrine.

Pursuant to Fed. R. Evid. 502(b), disclosure of privileged materials will not operate as a waiver if the disclosure was inadvertent, the holder of the privilege or protection took reasonable steps to prevent disclosure, and the holder promptly took legal steps to rectify the error.  To determine whether an inadvertent disclosure waives a privilege, courts consider the reasonableness of the precautions to prevent disclosure, the time taken to rectify the error, the scope of the discovery, the extent of the disclosure, and the overriding issue of fairness. *Francisco*, 756 F. Supp. 2d at 718 (citing *New Bank of New England v. Marine Midland Realty Corp.*, 138 F.R.D. 479, 482 (E.D. Va. 1991)).  The burden of proving inadvertent disclosure is on the party asserting the privilege. *In re: Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 417-19, (N.D. Ill. 2006), supplemented by, 432 F.Supp.2d 794 (N.D. Ill. 2006).

NICO must establish that the disclosure of the claw back documents was inadvertent. *Datel Holdings Ltd, v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872, *7-*8 (N.D. Cal. Mar. 11, 2011).  To be inadvertent, the disclosure of a document must occur as the result of an accidental oversight or a careless, unintentional act.  *ePlus, Inc.*, 280 F.R.D. at 254.   Here, the circumstances of the production and the volume of allegedly-protected documents produced establish that NICO's production of the claw back documents was not inadvertent.  NICO's disclosure of the Resolute documents was part of a deliberate and planned document production on May 5, 2013.  The documents were not simply loose papers that got caught in the shuffle and hastily stuffed into the wrong envelope.  Instead, NICO's counsel has explained that an army of attorneys reviewed, analyzed, coded, and processed NICO's document productions in this case.  *See* Tr. of Conf. Call, 20:21-24 (May 9, 2013) (Dkt. No. 66) ("We had six full-time lawyers, three from Hunton & Williams, three from Quinn Emanual [*sic*], and 30 contract reviewers going through stuff to make sure we had caught everything.")  Following this painstaking review, the documents in question were assigned bates numbers, loaded to an FTP website, and produced to Ford in digital format on Sunday, May 5, 2013, as part of a set of 2,967 documents.  When NICO produced the documents, NICO's counsel's e-mail message noted that gaps in the Bates ranges represented "withheld documents," suggesting that those documents had not been produced on claims of privilege.  Ford's counsel detected 2,177 pages missing from the document production on May 5, 2013, suggesting that NICO was indeed withholding those documents on claims of privilege. As NICO's subsequently-prepared 176-page privilege log suggests, NICO knows exactly how to avoid producing documents on claims of privilege.

Even if NICO's disclosure of the Resolute documents was in fact inadvertent, NICO's production of the documents waives any privilege claims.  The Court has already recognized that

the Resolute documents are within the proper scope of discovery in the Order of January 30, 2013.  While NICO may argue that it took reasonable precautions to prevent disclosure and acted promptly to claw-back the documents, such arguments ignore the likelihood that NICO's counsel collected the documents in 2011 but failed to claim privilege over them before the deadline of February 13, 2013, or did not bother to collect the documents until March or April 2013, well after the deadline established by the Court.  NICO also faces a stiff challenge in accounting for the large volume of the documents that were inadvertently produced on May 5 – at one time claimed to be 319 documents (or 10 percent of the 2,967 documents produced) by NICO – but eventually whittled down to double-digits, through tactical concessions.  *See Inhalation Plastics, Inc. v. Medex Cardio Pulmonary, Inc.*, No. 2:07 CV 116, 2012 U.S. Dist. LEXIS 121830, at *12 (S.D. Ohio Aug. 28, 2012) (finding that a 4.6 percent error was "relatively high"); *see also Ergo Licensing LLC v. Carefusion* 303, Inc., 263 F.R.D. 40, 47 (D. Me. 2009) (noting that a 6 percent error rate "may be some evidence of waiver").

Moreover this selective claw back by NICO suggests a deliberate decision and strategy to produce privilege documents that benefit NICO, while hiding documents that hurt NICO or may be helpful for Ford.  Such selective disclosure is waiver.  *See United States v. Moazzeni*, No. Case No. 3:12CR45–HEH, 2012 WL 6019101, *9-10 (E.D.Va. Dec. 3, 2012).  Once a party has waived a protection or privilege, that waiver extends to all documents containing that subject-matter.  *See ePlus, Inc.*, 280 F.R.D. at 254 (holding that party's discovery production of various documents containing information about product development resulted in subject-matter waiver of all documents discussing that same subject).

**3.     NICO's Subsequent Document Productions Waived the Claimed Privileges for Many of the Resolute Documents.**

A party can obtain no protection for materials and information it chooses to disclose selectively and strategically.  *See, e.g., JJK Mineral Co. LLC v. Swiger*, No. 1:12cv00143, 2013 WL 663283, *6 (N.D.W.Va. Feb. 22, 2013) (party waived attorney-client privilege and work product doctrine protection when it disclosed various protected information to support its defense in litigation).  The Fourth Circuit has extended waiver in these situations beyond the advice-of-counsel defense to any strategic use of privileged information by a party.  *See Jones*, 696 F.2d at 1072.

In *Jones*, a party disclosed certain portions of an attorney's letter in promotional materials and brochures, but later, in litigation, sought to quash subpoenas requesting documents related to the subject of the attorney's letter.  696 F.2d at 1071-72.  The Fourth Circuit upheld the trial court's decision that the party had waived the privileged information: "[W]hen a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter. Selective disclosure for tactical purposes waives the privilege."  *Id.*  The Rules of Evidence, which seek to protect a party's privileges, supports this concept.  *See* Fed. R. Evid. 502(a) (intentional disclosure constitutes subject-matter waiver); Rule 502 Advisory Committee Notes ("Subject-matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner.").  The party arguing non-waiver has the burden of proving that the information has not been waived.  *Jones*, 696 F.2d at 1072.

This is exactly what NICO has done here and, as such, has waived any claims of privilege related to various categories of documents.

### a.      NICO Abandoned Its Privilege Objections Regarding E-mails with John Yacoub.

NICO currently claims privilege over several documents subject to claw back because those documents include communications with John Yacoub.  On May 17, 2013, however, NICO withdrew claims of privilege involving similar communications between Mr. Yacoub and Resolute employees regarding legal advice on reserves and analysis policy coverage positions. *See* Ex. 10, 3.  NICO gave these e-mails new Bates numbers and produced them on May 17 at NICO466384 (formerly NICO446573) and NICO466424-NICO466425 (formerly NICO455516-NICO455517).  *See* Ex. 20, e-mail from S. Whitley to J. Yacoub (July 25, 2008 at 11:46 a.m.) (NICO466384); Ex. 21, e-mail from S. Whitley to J. Yacoub (June 27, 2008 at 11:46) (NICO4466424- NICO4466425).

NICO had previously withheld Ex. 20 (currently NICO466384) because it was an "[e]-mail from Steve Whitley to John Yacoub, copying Katherine Nicholson, seeking advice and analysis regarding potential liability under the ASLP and reserves."  *See* Ex. 9 at NICO446573. Similarly, NICO had not produced Ex. 21 (currently NICO466424-NICO466425), because it contained "legal advice on coverage issues related to the Buell-Wilson claim" and "analysis regarding the setting of reserves." Ex. 9 at NICO455516-NICO455517 By subsequently producing these documents, NICO has acknowledged that they are not properly subject to production under the attorney-client privilege or the work-product doctrine.  Based on the description in the privilege log, the claw back documents are so similar to those already produced that NICO has waived any right to assert a privilege.

## b.   NICO Has Forsaken Privilege Objections Relating to Document Collections from Resolute.

A number of the Resolute documents are claimed to be privileged by NICO because the documents relate to Quinn Emmanuel's collection of documents from Resolute, Resolute's litigation hold, and the use of outside vendors. NICO, however, withdrew such privilege claims for similar documents on May 17, 2013, and consciously produced similar documents at new Bates ranges. *See* Ex. 10, 2; Ex. 22, e-mail from P. Baines to S. Whitley (Dec. 8, 2010 at 10:15 a.m.) (NICO466417-NICO466419; formerly NICO447267-NICO447269); Ex. 23, Oliver Group Invoice (Sept. 30, 2011) (NICO466420; formerly NICO451218); Ex. 24, Oliver Group Invoice (Feb. 28, 2011) (NICO466421-NICO466422; formerly NICO453271- NICO453272). This is a category waiver. NICO had previously withheld these documents as privileged because they related to the arbitration between HDI-Gerling and Ford, constituted a "detailed invoice from document collection service provider," and detailed "services provided by data collection vendor, selected by and supervised by counsel, working at the direction of counsel." *See* Ex. 9 at NICO447267-NICO447269 (currently NICO466417-NICO466419); NICO451218 (currently NICO466421). Because the withheld documents cover the same subject matter as the documents that NICO has now produced, Ford asserts that the May 17 production waived any privilege as to the documents remaining under NICO's claw back.

## V.   CONCLUSION

For these reasons, Ford respectfully moves the Court to compel the production of the non-privileged documents that NICO has strategically attempted to shield from disclosure through the misapplication of the attorney-client privilege.

Dated: June 7, 2013                                   Respectfully Submitted,


                                                      _____/s/_____

                                                      Scott C. Oostdyk (VSB#28512)
                                                      soostdyk@mcguirewoods.com

                                                      J. Tracy Walker (VSB#31355)
                                                      twalker@mcguirewoods.com

                                                      H. Carter Redd (VSB#34392)
                                                      hredd@mcguirewoods.com

                                                      Matthew D. Fender (VSB# 76717)
                                                      mfender@mcguirewoods.com

                                                      McGuireWoods LLP
                                                      One James Center
                                                      901 E. Cary St.
                                                      Richmond, VA 23219
                                                      Tel: (804) 775-1000
                                                      Fax: (804) 775-1061

                                                      *Counsel for Ford Motor Company*

## **CERTIFICATE OF SERVICE**

I certify that on June 7, 2013, I filed the foregoing on the Court's CM/ECF system which

will cause a Notice of Electronic Filing (NEF) to be sent to the following counsel of record for

National Indemnity Company:

>George P. Sibley, III
>Hunton & Williams LLP
>Riverfront Plaza, East Tower
>951 East Byrd Street
>Richmond, Virginia 23219-4074
>
>Michael S. Levine, Esq.
>Hunton & Williams LLP
>1751 Pinnacle Drive, Suite 1700
>McLean, Virginia  22102
>Tel: (703) 714-7602
>Fax: (703) 918-4050
>E-mail: mlevine@hunton.com

>___/s/_____
>Counsel

48578098_1