**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| FORD MOTOR COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:12-cv-839 |
| v. | ) | |
| | ) | |
| NATIONAL INDEMNITY COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NATIONAL INDEMNITY COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**COMPEL THE DEPOSITION OF SCOTT C. OOSTDYK, ESQ.**

**\*\*ORAL ARGUMENT REQUESTED\*\***

**      REDACTED      **

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND........................................................................................................2

    A.    Ford And The Carriers Establish An Orderly Process For Auditing Of Ford's Claims By Scott Friedman Of Mitigate, Inc....................................................2

    B.    Ford Demands Payment On The Batch Claims And Arbitration Ensues. ...............2

    C.    Scott Oostdyk And McGuireWoods Assume Responsibility For Ford's Claims Correspondence With Insurers. ...................................................................3

    D.    Scott Oostdyk Tells HDI-Gerling's Claims Auditor That Ford Does Not Want Payment For The Non-Batch Claims While The Batch Claims Are In Dispute................................................................................................................5

ARGUMENT .................................................................................................................................9

I.    NICO SHOULD BE PERMITTED TO DEPOSE SCOTT OOSTDYK BECAUSE HIS ACTIONS FORM THE BASIS OF NICO'S EQUITABLE ESTOPPEL DEFENSE AND BELIE THE EXISTENCE OF ANY CONSPIRACY TO WITHHOLD PAYMENTS.................................................9

    A.    Scott Oostdyk's Deposition Is Required Under The Flexible Standards Set Forth By Rule 26.............................................................................................10

    B.    The *Shelton* Test Does Not Apply, But Even If It Did, Mr. Oostdyk's Deposition Would Be Required.............................................................................13

        1.    Mr. Oostdyk Is The "Best Source" For The Information. .........................14

        2.    The Information NICO Seeks Is Non-Privileged......................................16

        3.    The Information NICO Seeks Is Relevant, And Crucial To NICO's Defense. ....................................................................................................16

CONCLUSION............................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Allen*,
106 F.3d 582 (4th Cir. 1997) .............................................................................13

*Am. Casualty Co. of Reading, Pa. v. Krieger*,
160 F.R.D. 582 (S.D. Cal. 1995) .......................................................................14

*Amicus Commc'ns, L.P. v. Hewlett-Packard Co*,
No. 99-0284, 1999 WL 33117227 (D.D.C. Dec. 3, 1999).......................................14

*Buyer's Direct, Inc. v. Belk, Inc.*,
No. 5:10-C 2012, WL 3278928 (E.D.N.C. Aug. 10, 2012)....................................13

*Cascone v. Niles Home for Children*,
897 F. Supp. 1263 (W.D. Mo. 1995) ..............................................................14, 15

*Cook, Inc. v. C.R. Bard, Inc.*,
No. IP 00-1791-C(B/S), 2003 WL 23009047 (S.D. Ind. Sept. 18, 2003)................14

*DiLorenzo v. Costco Wholesale Corp.*,
243 F.R.D. 413 (W.D. Wash. 2007) ..................................................................14

*Dorroh v. Deerbrook Ins. Co.*,
No. 1:11-cv-2120, 2012 WL 4364149 (E.D. Cal. Sept. 21, 2012) ...................11, 12

*Glater v. Eli Lilly & Co.*,
712 F.2d 735 (1st Cir. 1983)................................................................................3

*In re Great Lakes Hotel Assoc.*,
154 B.R. 667 (E.D. Va. 1992)...............................................................................3

*Jamison v. Miracle Mile Rambler, Inc.*,
536 F.2d 560 (3rd Cir. 1976) ..............................................................................11

*Johnston Dev. Grp., Inc. v. Carpenters Local Union Number 1578*,
130 F.R.D. 348 (D.N.J. 1990)................................................................9, 10, 11

*Jones v. Scientific Colors, Inc.*,
Nos. 99-C-1959 & 00-C-0171, 2001 U.S. Dist. LEXIS 10753 (N.D. Ill. July 9,
2001) .................................................................................................................14, 15

*Kaiser v. Mut. Life Ins. Co.*,
    161 F.R.D. 378 (S.D. Ind. 1994)............................................................11

*Kleiman ex rel. Kleiman v. Jay Peak, Inc.*,
    No. 1:10-CV-83, 2012 WL 2498872 (D. Vt. June 27, 2012) ..................11

*Luster v. Schafer*,
    No. 08-cv-02399, 2009 WL 2219255 (D. Colo. July 23, 2009)..............12

*N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*,
    117 F.R.D. 83 (M.D.N.C. 1987) ............................................................14

*Pamida, Inc. v. E.S. Originals, Inc.*,
    281 F.3d 726 (8th Cir. 2002) ................................................................13

*Perkins v. Am. Transit Ins. Co.*,
    No. 10 Civ. 5655, 2011 WL 5051739 (S.D.N.Y. Oct. 24, 2011) ...........11

*Personalized Mass Media Corp. v. Weather Channel, Inc.*,
    899 F. Supp. 239 (E.D. Va. 1995) ........................................................16

*Rainbow Investors Grp., Inc. v. Fuji Trucolor Mo., Inc.*,
    168 F.R.D. 34 (W.D. La. 1996) ........................................................14, 15

*Sadowski v. Gudmundsson*,
    206 F.R.D. 25 (D.D.C. 2002)..................................................................10

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ..........................................................13, 14

*Smith v. Life Investors Ins. Co. of America*,
    No. 2:07-cv-681, 2009 WL 3364933 (W.D. Pa. Oct. 16, 2009)..............12

*Solis v. Bruister*,
    No. 4:10-cv-77-DPJ-FKB, 2012 WL 930936 (S.D. Miss. Mar. 17, 2012)......................11, 14

*Srail v. Village of Lisle*,
    No. 07-cv-2617, 2007 WL 4441547 (N.D. Ill. Dec. 12, 2007)............9, 11

*In re Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2d Cir. 2003)................................................................10, 13

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    164 F.R.D. 245 (D. Kan. 1995)...............................................................10

*United States v. Philip Morris Inc.*,
    209 F.R.D. 13 (D.D.C. 2002)..............................................................................................9

*In re Varat Enters., Inc.*,
    81 F.3d 1310 (4th Cir. 1996) .........................................................................................9, 16

*Younger Mfg. Co. v. Kaenon, Inc.*,
    247 F.R.D. 586 (C.D. Cal. 2007).......................................................................................12

## FEDERAL STATUTES

28 U.S.C. § 1406................................................................................................................3

## MISCELLANEOUS

Va. R. Prof. Conduct 3.7, cmt. [2].........................................................................................16

National Indemnity Company ("NICO") respectfully submits this Memorandum of Law in support of its motion for an order compelling the deposition of Scott Oostdyk with respect his non-privileged claims-reporting and management communications with Ford Motor Company's ("Ford") insurers under the Aggregate Stop Loss Policies ("ASLP"), including (without limitation) such communications with Scott Friedman and Mitigate, Inc.  Mr. Oostdyk is an attorney with McGuireWoods LLP and counsel to Ford.[1]

## PRELIMINARY STATEMENT

From February 2008 through January 2011, NICO, acting as HDI-Gerling's agent, paid Ford more than $50 million on non-batch claims (the "Non-Batch Claims") submitted under the ASLP with Ford.  After January 2011, HDI-Gerling's payments on undisputed Non-Batch Claims stopped.  Why those payments stopped is one of the key fact questions in the case.  Was it the result of a nefarious conspiracy between HDI-Gerling and NICO?   Or was it because Ford, acting through Mr. Oostdyk, put a halt to the process then in place that allowed for the payment of Non-Batch Claims and instead opted for an "all or nothing approach"—one single payment from each ASLP carrier reflecting payment of both disputed batch claims ("Batch Claims") and undisputed Non-Batch Claims?

The recent deposition testimony of Scott Friedman and documents authored by Mr. Oostdyk himself provide the answer.  This evidence shows that Mr. Oostdyk, on behalf of Ford, instructed Mr. Friedman, HDI-Gerling's claims auditor and liaison to Ford, to suspend payments for Ford's Non-Batch Claims while its Batch Claims were in dispute, and that HDI-Gerling

---

[1]   At the May 6, 2013 hearing, the Court authorized NICO to file this motion, if NICO continued to believe it necessary, following Scott Friedman's deposition.  (*See* Declaration of George P. Sibley, III ("Sibley Decl.") Exhibit ("Exh.") 1).  Mr. Friedman was deposed on May 30, 2013.  The parties have met and conferred numerous times (*see* Sibley Decl. Exh. 2-9), and NICO believes in good faith that this dispute cannot be resolved without the Court's intervention.  (Sibley Decl. ¶ 32.)

followed that instruction.  If Ford intends to challenge this evidence at trial, there is only one witness on the Ford side capable of doing so—Mr. Oostdyk.  NICO is entitled to discover his version of events.

Under these circumstances, NICO's request to obtain the deposition of Mr. Oostdyk would not be controversial but for the fact that Ford has chosen to retain one of its key witnesses as its trial advocate.  That tactical decision by Ford, however, should not limit the discoverability of non-privileged information known to Mr. Oostdyk.

## FACTUAL BACKGROUND

**A.      Ford And The Carriers Establish An Orderly Process For Auditing Of Ford's Claims By Scott Friedman Of Mitigate, Inc.**

In the late 1990s, Ford was hit with a wave of litigation involving its Explorer models equipped with Firestone tires.  By late 2001, those claims eroded the aggregate retention under certain of the ASLP, and ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████

**B.**      ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

### C.     Scott Oostdyk And McGuireWoods Assume Responsibility For Ford's Claims Correspondence With Insurers.

In March 2010, █████████████████████████████████████████

██████████████████████████████████████████████ he and his

firm, McGuireWoods LLP ("McGuireWoods"), took over claims-reporting and correspondence

for Ford, ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

---

[2]  McGuireWoods' communications regarding Ford's claims are the **sole** predicate for venue in this district.  In its Complaint (ECF No. 1), Ford alleged that it "submitted to Mr. Friedman, from Virginia and elsewhere, extensive claims information supporting Ford's entitlement to payment of non-batch claims and expenses."  Compl. ¶ 34.  Ford has since conceded that "[t]he only allegations in Ford's complaint that occurred in Virginia involve McGuireWoods" (Sibley Decl. Exh. 14 at 41-42 (RFA No. 203)), and only McGuireWoods "possesses knowledge of material information relevant to this dispute" within the State of Virginia.  (Sibley Decl. Exh. 15 at 10 (RFA No. 230)).  If Ford now contends that McGuireWoods was simply acting as outside counsel to Ford, and not as Ford's claims handler (Sibley Decl. Exh. 4 at 4; Exh. 7 at 3), then venue was never proper in this District.  Until discovery in this case, the facts concerning venue were not sufficiently developed to move to dismiss on lack of venue.  *See Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983).  Under these circumstances, if McGuireWoods is deemed to be solely litigation counsel, the Court would have no option to retain jurisdiction where venue is improper.  *See In re Great Lakes Hotel Assoc.*, 154 B.R. 667, 671 (E.D. Va. 1992) (citing 28 U.S.C. § 1406).



He was also designated as Ford's Rule 30(b)(6) witness on the topic of Ford's non-batch products liability claims and Ford's communications with Mitigate.  (Sibley Decl. Exh. 17.)  On behalf of Ford, Mr. Boik testified as follows

 Dan Ames, the Associate Director of Ford's

Corporate Insurance Department, confirmed that McGuireWoods' work "broadened to include

collection of batch and non-batch recoveries" and that "[i]n the course of this work, Mr.

Oostdyk's firm assisted Ford in submitting materials to the insurers' agent Mitigate, Inc."

(Sibley Decl. Exh. 18.)

There are other indications that Mr. Oostdyk and his colleagues at McGuireWoods had

assumed responsibility for reporting Ford's claims to its insurers and related correspondence.

If Ford intends

to argue at trial that it requested payment from HDI-Gerling, only a McGuireWoods witness will

be competent to do so.

**D.     Scott Oostdyk Tells HDI-Gerling's Claims Auditor That Ford Does Not Want Payment For The Non-Batch Claims While The Batch Claims Are In Dispute.**

Mr. Friedman's deposition took place on May 30, 2013.  His deposition testimony and

associated exhibits reflect that Mr. Oostdyk himself was intimately involved in the collection,

organization, and presentation of materials supporting Ford's claims to Scott Friedman, the

claims auditor, and that Mr. Oostdyk had extensive communication with Mr. Friedman on the

subject.  (*See, e.g.*, Sibley Decl. Exhs. 19-28.)  Indeed, Mr. Friedman testified that he

communicated with Mr. Oostdyk in exactly the manner he had communicated previously with

Mr. Boik:

> Q.  So you were going outside of the circle of the community of interest of the carriers in providing stuff to an outside entity besides Swiss Re?
>
> A.  That is a characterization of events that baffles me as to what you are saying.  You and I worked together in collaboratively so we can try to figure out what documents have been reviewed and not reviewed, what claims we are working on.  ***We exchanged information back and forth as if I was exchanging it with Ford, as I was exchanging it with Boik.  As I do with every other insured that I work with.***

(Sibley Decl. Exh. 27, Friedman Dep. 250:12-250:24 (emphasis supplied).)

Mr. Friedman also testified—repeatedly—that, although Ford always previously accepted rolling payments from Carriers when there were disputed claims, Mr. Oostdyk told him, on January 17, 2011 and multiple times thereafter, that Ford did not want payment for its Non-Batch Claims while the Batch Claims remained in dispute:

> Q.  Has HDI-Gerling ever asked you to prepare a report that would detail for each of the coverage years of 1995 to 2003 what would be its obligation if all it was paying was non-batch claims?
>
> A.  As I sit here today I don't remember that being done.  And it is hard for me to remember everything with this but I don't remember that being done.
>
> Q.  If that was done would you have produced the documentation to Mr. Worcester's firm when they asked you for it?
>
> A.  I can tell you that I have conducted that analysis okay, on behalf of other insurers in the group, okay.  I have gone through a discussion as to whether or not non-batch claims should be considered for payment.  I am capable of doing that, okay and I have done that and in most instances the conclusion has been and it is my understanding that ***you [Scott Oostdyk] have told me as well as other insurers that you don't want that done, that you do not want a partial payment,*** that you want a payment on behalf—you want to negotiate with each insurer individually and to pay a hundred percent of the payment and that ***you [Scott Oostdyk] on behalf of Ford tell the insurers not to make payment on only batch cases or a group of cases, you want to negotiate a final***

*resolution to get all of the moneys from the insurer or whatever you negotiate to be all the moneys and not to make individual payments* of for example, just non-batch cases that's been rejected by Ford and they want—that you [Scott Oostdyk] individually want to negotiate with the individual insurers to get as much of the hundred percent number as you can negotiate.

Q.  Who have you been telling that to?

A.  That has been—I have had that discussion with you [Scott Oostdyk] and each of the insurers on the program.

Q.  Did Ford Motor Company tell you to tell that to the insurance companies?

A.  Well, did Ford Motor—there is no such thing as Ford Motor Company as an individual.  It is a corporation.  So Ford Motor Company, the building, physical structure didn't tell me that.  *We have had that discussion.  We have had that discussion*….

(*Id.* at 326:25-328:23 (emphasis supplied); *see also id.* at 225:17-230:14 (similar).)

This testimony was elicited from Mr. Friedman, by Mr. Oostdyk, in response to questions about an email dated January 17, 2011, that Mr. Friedman sent to Mr. Oostdyk.  (Sibley Decl. Exhs. 23 & 28 ("Last, you indicated Ford does <u>not</u> want the insurers to issue payments at this time, even on claims that may not be in dispute.  Instead, you want each insurer to issue one check when the audit process is complete.") (emphasis in original)).  *See also* Sibley Decl. Exh. 27, Friedman Dep. at 357:2-359:21 ("Q.  Did you ever tell anybody that Ford didn't want payment for non-batch claims?" *** "A.  … The answer is yes, I did tell people that Ford did not want payment alone for just non-batch cases….  That was our common understanding … that you [Scott Oostdyk] were going to have individual discussions with the insurers where you would negotiate individually … that Ford's representative Scott Oostdyk would and in those discussions with the individual insurers I was told and understand today that Ford did not want payments of only the non-batch claims….") (colloquy omitted).

The process that the Carrier group established years before, which had worked for nine years to ensure that Ford was paid on every single Non-Batch Claim submitted, thus came to a halt—at Mr. Oostdyk's direction.

Tellingly, even after HDI-Gerling had commenced arbitration against Ford on November 16, 2010 seeking a declaration as to its coverage obligations for Ford's Batch Claims, NICO continued to fund the payment of Non-Batch Claims on behalf of HDI-Gerling.  A payment of more than $1 million was made in December 2010, the month *after* the arbitration was filed and the month *before* Mr. Oostdyk informed Mr. Friedman that Ford did not want rolling, partial payments but would prefer instead to negotiate one payment from each Carrier.  (Sibley Decl. Exh. 15 at 24 (RFA No. 148).)

Moreover, the fact that HDI-Gerling understood Ford to have refused payment of undisputed Non-Batch claims was made clear in the arbitration; where, in January 2012, HDI-Gerling explained in a filing to the panel that there were certain undisputed claims that HDI-Gerling was willing to pay but that Ford wanted to receive a single check.  (Sibley Decl. Exh. 29 at 3 n.4.)  Ford never disputed HDI-Gerling's assertion in the arbitration—that is, until Ford commenced this litigation against NICO.   Indeed, in the arbitration, although Ford's counter-demand states that Ford seeks to recover payment of unspecified Non-Batch Claims, Ford has *never* identified the specific amount it claims it was owed for any Non-Batch Claims.  It was not until Ford supplemented a response to an interrogatory from NICO in this litigation that Ford identified those amounts with any specificity.  Within a week after Ford had specified the amount it was claiming for Non-Batch Claims, Resolute Management (on behalf of HDI-Gerling) offered to pay those Non-Batch Claims, subject to a reservation of rights concerning

HDI-Gerling's arguments in the arbitration which will necessarily impact Ford's claims in this

action.  (Sibley Decl. Exh. 30.)

## ARGUMENT

**I.    NICO SHOULD BE PERMITTED TO DEPOSE SCOTT OOSTDYK BECAUSE HIS ACTIONS FORM THE BASIS OF NICO'S EQUITABLE ESTOPPEL DEFENSE AND BELIE THE EXISTENCE OF ANY CONSPIRACY TO WITHHOLD PAYMENTS**

Scott Oostdyk's actions on behalf of Ford are at the heart of the central factual

controversy in this case:  Did Mr. Oostdyk, acting for Ford, instruct Mitigate and HDI-Gerling to

suspend payments of Non-Batch Claims until a resolution of all claims could be achieved?

Under the doctrine of equitable estoppel, if Mr. Oostdyk gave that instruction on behalf of Ford,

and HDI-Gerling relied on that instruction in determining to suspend payments that it otherwise

would have made, NICO cannot be held liable for HDI-Gerling's failure to make those payments

under any of the theories alleged in the Complaint.  *See In re Varat Enters., Inc.*, 81 F.3d 1310,

1317 (4th Cir. 1996).  Under these circumstances, the Court should compel Mr. Oostdyk to

appear for a deposition.

"In cases where the attorney's conduct itself is the basis of a claim or defense, there is

little doubt that the attorney may be examined as any other witness[.]"  *Johnston Dev. Grp., Inc.*

*v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990); *United States v. Philip*

*Morris Inc.*, 209 F.R.D. 13, 19 (D.D.C. 2002) ("[T]he Federal Rules of Civil Procedure create no

special presumptions or exceptions for lawyers, or anyone else …."). Thus, "[a] party cannot

insulate an attorney who has otherwise relevant knowledge from the processes of discovery by

having that attorney file an appearance in the pending case."  *Srail v. Vill. of Lisle*, No. 07 C

2617, 2007 WL 4441547, at *2 (N.D. Ill. Dec. 12, 2007).  By employing counsel "'to represent

it in a case where an attorney has played a role in the underlying facts, both the attorney and the

party have every reason to expect that the attorney's deposition may be requested.'" *Sadowski v. Gudmundsson*, 206 F.R.D. 25, 26 (D.D.C. 2002) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995)).

### A.    Scott Oostdyk's Deposition Is Required Under The Flexible Standards Set Forth By Rule 26.

As then-Judge Sotomayor, writing for the Second Circuit, explained,

> the standards set forth in Rule 26 [of the Federal Rules of Civil Procedure] require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship.  Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.). Under these flexible factors, courts have regularly permitted the depositions of opposing trial counsel—including *lead* trial counsel—who are fact witnesses to underlying events or where counsel's actions formed the basis for a claim or defense, limiting the scope of such depositions to preclude inquiry into legal strategy, and subject to the usual objections for privilege.

For example, in the oft-cited case of *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, plaintiffs' trial counsel participated in four meetings within the three months prior to the inception the litigation in which "the objects and purposes" of defendants' conduct underlying the suit—"a key issue in th[e] case"—were discussed.  130 F.R.D. at 353-54. What was said at the meetings, however, was "intensely disputed"; the credibility of the testimony of the sole plaintiffs' witness at the meetings could "hinge upon the consistency" of the recollection of other participants.  *Id.* at 354.  The court held that the negative impact on the

adversary process was outweighed in light of the importance of the attorney's testimony, and therefore denied defendant's motion for a protective order and ordered the attorney produced for deposition. *Id.* at 356.

*Solis v. Bruister*, No. 4:10-cv-00077-DPJ-FKB, 2012 WL 930936 (S.D. Miss. Mar. 17, 2012), is also instructive.  In that case, defendants' statute of limitations defense was grounded in their argument that a tolling agreement purportedly signed by plaintiff's trial counsel on a certain date had not, in fact, been signed on that date.  *Id.* at *1.  As the questions of whether and when plaintiff's counsel had signed the tolling agreement were "relevant and necessary to provide a more complete record for consideration" of the statute of limitations defense, and plaintiff's counsel was "'the actor in [the] prelitigation conduct,'" the court held that his deposition was required.  *Id.* at *2-3 (quoting *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 382, 389 (S.D. Ind. 1994)).[3]

Similarly, here, the evidence shows that Mr. Oostdyk initiated a dispute with HDI-Gerling over the Batch Claims and then personally instructed HDI-Gerling's claims auditor that Ford did not want payment on the Non-Batch Claims until he could negotiate a deal concerning the Batch Claims.  Indeed, Mr. Oostdyk's conduct squarely forms the basis of one of NICO's defenses.  NICO should be permitted to inquire about that conduct.  *See Dorroh v. Deerbrook*

---

[3]   *See also Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565 & 565 n.9 (3rd Cir. 1976) (holding that trial court erred in granting protective order barring deposition of opposing trial counsel where he was fact witness to conversations regarding settlement underlying plaintiff's fraud claim); *Kleiman ex rel. Kleiman v. Jay Peak, Inc.*, No. 1:10-CV-83, 2012 WL 2498872, at *6 (D. Vt. June 27, 2012) (ordering deposition where attorney was "the only person capable of authoritatively affirming or negating [plaintiffs'] deposition testimony on a central liability issue"); *Perkins v. Am. Transit Ins. Co.*, No. 10 Civ. 5655(CM)(RLE), 2011 WL 5051739, at *2 (S.D.N.Y. Oct. 24, 2011) (ordering deposition of plaintiff's trial counsel in insurance bad faith action where trial counsel participated in discussions regarding insurer's decision to reject an offer within policy limits); *Srail*, 2007 WL 4441547, at *2-3 (denying motion to quash subpoena of opposing counsel where he had knowledge regarding "a key disputed issue" that was not privileged).

*Ins. Co.*, No. 1:11-cv-2120 AWI GSA, 2012 WL 4364149, at *8 (E.D. Cal. Sept. 21, 2012) (holding that attorney could be deposed regarding his actions that formed basis of plaintiff's defense that attorney's law firm had acted negligently); *Luster v. Schafer*, No. 08-cv-02399-PAB-KMT, 2009 WL 2219255, at *2 (D. Colo. July 23, 2009) (holding that counsel's deposition was required where "it is the actions of [counsel] or an individual acting wholly at his direction, that form the basis for two claims in the complaint").

Nor is there a significant risk of encountering privilege or work-product issues in connection with a deposition of Mr. Oostdyk on this subject.  NICO seeks to depose Mr. Oostdyk solely regarding his role in handling Ford's claims and his interactions with third parties such as Scott Friedman, Mitigate, Inc., and third-party insurers, which Ford has admitted is the *sole* basis for venue in this jurisdiction.  *See supra* note 2.  NICO does not intend to inquire into Mr. Oostdyk's privileged communications with Ford or his legal strategy in preparing for this litigation.  Under these circumstances, deposition discovery of Mr. Oostdyk's submission of claims and related correspondence with third parties is entirely appropriate.  *See Smith v. Life Investors Ins. Co. of America*, No. 2:07-cv-681, 2009 WL 3364933, at *5 (W.D. Pa. Oct. 16, 2009) (granting motion to compel deposition testimony of in-house counsel who "engaged in non-privileged business activity," including work on task force and training of claims examiners); *Younger Mfg. Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588-89 (C.D. Cal. 2007) (denying *ex parte* application for protective order shielding General Counsel and Chief Operating Officer whose responsibilities included claims investigation and advice, and who was fact witness to underlying events.).

Ford has conceded in this litigation that a lawyer's activities are not privileged under these circumstances:

> No privilege attaches when an attorney performs investigative work in
> the capacity of an insurance claims adjuster rather than as a lawyer ….
> '[t]o the extent' attorneys acted as claims adjusters, a 'pure, ordinary
> business function,' … their investigation [was] 'outside the scope of
> the asserted privileges.

Ford's Mem. of Law in Supp. of Its Mot. to Compel Discl. of 55 Non-Priv. Docs. (ECF No. 107)

at 9-10 (quoting *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997) (alterations in Ford's Mem.)).  In

fact, Ford has already deposed HDI-Gerling's counsel, John Yacoub, who participates in claims-

handling, as well as two of NICO's in-house counsel, both of whom have legal as well as non-

legal responsibilities and who are heavily involved in preparation of this case.  Meanwhile, Ford

has opposed the deposition of *any* lawyer in its office of general counsel despite their admitted

involvement in claims handling, the deposition of a McGuireWoods paralegal who was also

heavily involved in the handling Ford's ALSP claims, and the deposition of Mr. Oostdyk, whose

statements to Mr. Friedman are a significant part of NICO's defense.

> **B.      The *Shelton* Test Does Not Apply, But Even If It Did, Mr. Oostdyk's
>          Deposition Would Be Required.**

In the meet-and-confer process, Ford indicated that Mr. Oostdyk's deposition was

unwarranted under *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1324 (8th Cir. 1986).  (Sibley

Decl. Exh. 3 at 4; Exh. 7 at 4; Exh. 9 at 2.)  The *Shelton* test is inapplicable, however, because it

applies only where the deposition "could potentially lead to the disclosure of the attorney's

litigation strategy."  *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002); *In re

Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (citing *Pamida*, 281 F.3d 726); *accord

Buyer's Direct, Inc. v. Belk, Inc.*, No. 5:10-CV-65-H, 2012 WL 3278928, at *8 (E.D.N.C. Aug.

10, 2012).  In the *Shelton* case, defense counsel was not a fact witness to the underlying events at

all; instead, plaintiffs sought to depose her regarding her selection and compilation of documents

in the course of the litigation—*i.e.*, classic work product.  805 F.2d at 1330.  NICO, on the other

hand, seeks to depose Mr. Oostdyk solely as a fact witness regarding his non-privileged claims-handling activities—which Ford affirmatively used to allege that venue was proper in this jurisdiction—and his interactions with third parties, and during a time period when the instant litigation was nowhere in sight, as stated above.

Even if *Shelton* did apply, Mr. Oostdyk's deposition is nonetheless required.  Under *Shelton*, the attorney must be deposed where:  "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case."  *Shelton*, 805 F.2d at 1327 (citations omitted).  As the courts within this Circuit have pointed out, the "deposition of an attorney is both necessary and appropriate" under *Shelton* where the attorney is "a fact witness, such as an actor or a viewer," as Mr. Oostdyk is here.  *See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 n.2 (M.D.N.C. 1987).[4]

## 1.   Mr. Oostdyk Is The "Best Source" For The Information.

Courts have found the first prong satisfied where, *inter alia*, counsel was "the best source for information" on a disputed issue or otherwise played a "key role" in the underlying events. For example, in *Cascone v. Niles Home for Children*, plaintiff alleged that she had been fired from her position as a comptroller on account of her race, and had been retaliated against for asserting her rights.  897 F. Supp. at 1264.  The defendant argued that it had fired her because

---

[4]   *See also, e.g.*, *Solis*, 2012 WL 930936, at *3; *DiLorenzo v. Costco Wholesale Corp.*, 243 F.R.D. 413, 415 (W.D. Wash. 2007); *Cook, Inc. v. C.R. Bard, Inc.*, No. IP 00-1791-C(B/S), 2003 WL 23009047, at *1 & n.1 (S.D. Ind. Sept. 18, 2003); *Jones v. Scientific Colors, Inc.*, Nos. 99 C 1959 & 00 C 0171, 2001 U.S. Dist. LEXIS 10753, at *3 (N.D. Ill. July 9, 2001); *Amicus Commc'ns, L.P. v. Hewlett-Packard Co*, No. 99-0284 HHK/DAR, 1999 WL 33117227, at *2 (D.D.C. Dec. 3, 1999); *Rainbow Investors Grp., Inc. v. Fuji Trucolor Mo., Inc.*, 168 F.R.D. 34, 37-38 (W.D. La. 1996); *Am. Casualty Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 589-91 (S.D. Cal. 1995); *Cascone v. Niles Home for Children*, 897 F. Supp. 1263, 1266 (W.D. Mo. 1995).

she failed to process garnishments as required, but plaintiff asserted that defendant's counsel had advised her that counsel would process the garnishments. *Id.* The court held that counsel's deposition was required because counsel was "the best source for information regarding what she told [plaintiff]," and that because the issue of what had been said was in dispute, "sooner or later [defense counsel] will have to be deposed." *Id.* at 1266. *See also Rainbow Investors Grp., Inc. v. Fuji Trucolor Mo., Inc.*, 168 F.R.D. 34, 37-38 (W.D. La. 1996) (deposition of plaintiff's counsel was required where counsel had negotiated the underlying business transaction and plaintiff's president indicated in his deposition that defense counsel may possess vital information regarding the sale of which he was not aware); *Jones v. Scientific Colors, Inc.*, Nos. 99 C 1959 & 00 C 0171, 2001 U.S. Dist. LEXIS 10753, at *3 (N.D. Ill. July 26, 2001) (where defendant asserted the reasonableness of its investigation as a defense, EEOC was entitled to examine defense counsel, "in his capacity as investigator," as he was "uniquely qualified to explain the scope of the investigation and its findings").

Here, Ford denies that Mr. Oostdyk instructed Mr. Friedman to suspend rolling payments on the Non-Batch Claims, and has further disputed that it failed to request payment again on a rolling basis after that. Mr. Oostdyk is the only Ford representative who has personal knowledge to confirm or deny Mr. Friedman's sworn testimony on this subject, because the conversations at the center of this dispute occurred between Mr. Friedman and Mr. Oostdyk themselves. (Sibley Decl. Exh. 27, Friedman Dep. 328:22-328:23, *supra* ("***We have had that discussion. We have had that discussion*….") (emphasis added).)** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Only Mr. Oostdyk can answer if McGuireWoods

made such a request on Ford's behalf.  Finally, Ford disputed NICO's assertion that Ford failed to submit sufficient proof of loss to Mitigate for payment to become due on all of the Non-Batch Claims, and Scott Oostdyk is the only potential witness identified in discovery to date who could contradict Scott Friedman's currently undisputed testimony that Ford failed to submit sufficient documentation to Mitigate.  If Ford intends to contradict any of NICO's arguments on that point, then it must allow Mr. Oostdyk to sit for a deposition.

2.      The Information NICO Seeks Is Non-Privileged.

As discussed *supra*, Mr. Oostdyk's communications with third parties like Mr. Friedman, Mitigate, Inc., or third party insurers are, by definition, non-privileged.  NICO intends to question Mr. Oostdyk regarding his interactions with third parties, not his confidential communications with his client, Ford.

3.      The Information NICO Seeks Is Relevant, And Crucial To NICO's Defense.

If, as NICO contends, Mr. Oostdyk advised Scott Friedman that Ford did not want payment on the Non-Batch Claims while the Batch Claims were in dispute and then never told HDI-Gerling or any of its agents otherwise, NICO has a complete defense to Ford's tortious interference and conspiracy claims.  *See In re Varat Enters., Inc.*, 81 F.3d at 1317 ("The doctrine of equitable estoppel allows a person's act, conduct or silence when it is his duty to speak, to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action.") (internal quotation marks omitted).  Scott Oostdyk's testimony in this regard is thus indisputably relevant—indeed, it is crucial—to one of NICO's defenses.[5]

---

[5]   Mr. Oostdyk's personal involvement in the key conversations and events that are at the heart of this dispute also call into question the propriety of him serving as an advocate at trial for Ford.  *See Personalized Mass Media Corp. v. Weather Channel, Inc.*, 899 F. Supp. 239, 245 (E.D. Va. 1995) (Payne, J.).  If, as NICO suspects, Mr. Oostdyk at deposition disputes Mr. Friedman's version of events and what the documents show, NICO and the Court will be faced

## <u>CONCLUSION</u>

For the foregoing reasons, NICO respectfully requests that the Court grant its Motion to compel the deposition of Scott Oostdyk with respect his non-privileged claims-reporting and management communications with the ALSP insurers, including (without limitation) such communications with Scott Friedman and Mitigate, Inc.

---

with the very situation the witness-advocate rule was intended to avoid—the advocate on one side arguing to the jury that it should believe him, not the witness testifying for the other side. *See* VA. R. PROF. CONDUCT 3.7, cmt. [2].

Respectfully submitted,

Dated:  June 13, 2013

/s/ George P. Sibley, III

Walter J. Andrews (VSB No. 46031)
wandrews@hunton.com
Michael S. Levine (VSB No. 48013)
mlevine@hunton.com
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
(703) 714-7400

George P. Sibley, III (VSB No. 48773)
gsibley@hunton.com
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

Andrew M. Berdon (*pro hac vice*)
andrewberdon@quinnemanuel.com
Jane M. Byrne (*pro hac vice*)
janebyrne@quinnemanuel.com
Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Toji Calabro (*pro hac vice*)
tojicalabro@quinnemanuel.com
Brad Rosen (*pro hac vice*)
bradrosen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant*
*National Indemnity Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 13th, 2013, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which will cause a notice of electronic filing to be sent to the following counsel of record for Ford Motor Company.

> Scott C. Oostdyk, Esq.
> J. Tracy Walker, Esq.
> H. Carter Redd, Esq.
> Matthew D. Fender, Esq.
> MCGUIREWOODS LLP
> One James Center
> 901 E. Cary Street
> Richmond, Virginia 23219

/s/ George P. Sibley, III
George P. Sibley, III

19