UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| FORD MOTOR COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:12-cv-839 |
| | ) |
| NATIONAL INDEMNITY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF FORD MOTOR COMPANY'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO SANCTION
DEFENDANT NATIONAL INDEMNITY COMPANY**

Plaintiff Ford Motor Company ("Ford"), by counsel, states as follows in further support of its motion to sanction Defendant National Indemnity Company ("NICO") (ECF No. 96) and in reply to Defendant National Indemnity Company's Opposition to Ford's Motion to Sanction National Indemnity Company (ECF No. 117).

**I.     INTRODUCTION**

Ford seeks sanctions against NICO because NICO acted in bad faith when it violated the Court's order of January 30, 2013 (ECF No. 27), and failed to produce documents from Resolute by February 13, 2013, thereby causing Ford to suffer unfair prejudice in the prosecution of its claims against NICO. Although there is ample evidence that NICO had collected all of the responsive Resolute documents in the arbitration before the Court entered the order, NICO now represents that it failed to perform any document collection from Resolute in connection with Ford's requests for production in this litigation until April 2013. Either way, NICO has acted in

bad faith to delay this matter, prevented Ford from discovering relevant facts, and forced Ford to expend time and resources to rectify the situation.

NICO also deliberately provided a false answer to Ford's Interrogatory 5 regarding the payment of claims and verified that false answer though Kevin Lewis. As an officer of NICO and Resolute, Mr. Lewis was intimately involved with the Reinsurance Agreement, NICO and Resolute's duties relating to the Ford insurance policies, and the system of payment and approval. Despite this special knowledge, Mr. Lewis saw fit to verify an answer that he knew to be factually wrong, and NICO did not correct its interrogatory answer until Ford expended the time and effort to bring matter to the Court's attention and the Court ordered a different response.

## II. ARGUMENT

### A. NICO Acted in Bad Faith When It Violated the Court's Discovery Order.

#### 1. NICO Collected the Resolute Documents in Question before This Litigation Began.

Deposition testimony and document productions establish that NICO had already collected the Resolute materials in question. In 2011, after NICO commenced arbitration against Ford, Quinn Emanuel collected Ford-related documents from NICO's sister company and claims handler, Resolute. NICO had contracted with Resolute and designated Resolute as its third party administrator for handling claims arising under the aggregate stop loss policies. Steve Whitley of Resolute has already testified that Quinn Emmanuel and the Oliver Group had collected all of the Resolute documents in 2011 and that he personally photocopied his paper documents during the 2011 document sweeps. NICO's follow-up document collections in 2013 sought only materials that had been generated after 2011 document collection and added only three new custodians. [redacted]

2

███████████████████████████████████████████████
████████

Although NICO's has provided attorney declarations to explain its document collection strategy for Resolute in 2011 and 2013, NICO fails to present critical facts.  Significantly, NICO and its attorneys do not state when each Resolute document was first collected.  To the extent that Resolute documents were created in 2011 or earlier, they very likely would have been captured in the 2011 document collection that NICO relied upon and should have been produced on or before February 13, 2013.  Documents authored by or distributed to Steve Whitley, Julia Price, Kevin Lewis, and Robert Love would certainly fall within this category.  Consequently, NICO must disclose when the Resolute documents that were produced on or after February 13, 2013, were first collected and first reviewed for purposes of this litigation.  Such a disclosure would address documents within the Bates ranges NICO431674-438038, NICO438039-NICO460296, NICO460297-NICO461483, NICO461484-NICO461564, NICO461565-NICO464914, NICO465191-NICO466341, NICO466342-NICO466570, and NICO466609-NICO478707.  As the declaration of Alan Lacy demonstrates, NICO is clearly capable of providing this information and yet has not.

### 2.  NICO's Alternate History Establishes Bad Faith.

If accepted as true, NICO's explanation of its conduct reveals a willful refusal to participate in discovery and a deliberate disregard for this Court's order to produce Resolute documents on or before February 13, 2013.  If NICO's current position is to be believed, NICO consciously decided to shirk its discovery obligations in this case by delaying a bona fide document collection from Resolute and related document review until more than forty-five days after the Court's February 13, 2013 deadline.  NICO did not collect documents in response to the

Court's January 30 order. Instead, NICO claims to have relied on its prior document collection for the arbitration.

Recycling the arbitration discovery materials was bound to prejudice Ford because NICO, posing as HDI-Gerling, has engaged in egregious stonewalling in the arbitration. Although Ford requested information and documents regarding Resolute in the arbitration, NICO repeatedly objected and refused produce Resolute documents. But for discovery in this litigation, Ford would not have obtained copies of the most basic documents relating to the relationship between NICO, Resolute, and HDI-Gerling or learned who was really making the key decisions regarding its insurance coverage under HDI-Gerling insurance policies. *See* Ex. 2, Reinsurance Agreement; Ex. 3 ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

### B. Kevin Lewis Knowingly Provided a False Answer to Interrogatory 5.

During the hearing on May 29, 2013, NICO attempted to bolster its arguments with the Court by utilizing an e-mail from Kevin Lewis that had been produced on May 9, 2013. *See* NICO461520 (Ex. 27 to Ford's Mem. of Law in Supp. of Its Mot. to Sanction Def. Nat. Indem. Co. (ECF No. 97-27)). NICO meant for this document to show its diligence in paying some early Ford claims, and in chasing the payment details when it appeared that checks were slow. Instead, the document directly proved that Kevin Lewis orchestrated payment of Ford's claims out of NICO's Omaha, Nebraska, headquarters and swore falsely when he verified NICO's answer to Interrogatory 5 that "NICO does not approve payment under the Gerling Policies" and that NICO "is without information sufficient to respond to this Interrogatory."

Without a doubt, Mr. Lewis knew as of January 5, 2013 that NICO, not Resolute, was

responsible to pay Ford's claims. First, there is one and only one Kevin Lewis, and it is undisputed that he works for both NICO and Resolute. Though he wears many different hats, he is but one man. What Mr. Lewis knew as Resolute, NICO knew, too, as a matter of fact and legal reality. Second, HDI-Gerling had by the terms of the Reinsurance Agreement made NICO accountable for payments to Ford. *See* Ex. 2. Although HDI-Gerling and NICO directly contemplated that NICO might affiliate an agent, the payment obligation remained with NICO. *Id*. Indeed, Mr. Lewis worked on NICO's due diligence for the Reinsurance Agreement, oversaw the integration of Ford's policies and claims into the NICO and Resolute framework, and was intimately involved with the payment process. Third, the Resolute documents demonstrate NICO's direct participation in the payment approval process. The meeting minutes of Resolute's board of directors clearly show that NICO and Mr. Lewis were required to approve high-dollar payments under the "Gerling Deal:"

> **10. Affirmation of Gerling Deal Delegated Claims Authorities**
>
> To adjust and settle a claim up to a gross incurred coast of:
>
> Up to US$500,000 Steve Whitley, Peter Merry or Ollie Barrett.
>
> Up to US$1,000,000 Steve Michael or Robert Love
>
> Above US$1,000,000 Reinsurers approval required. Reinsurer currently nominated approvers are Kevin Lewis and Brian Snover.
>
> Above US$5,000,000 Resinsurer's approval required Reinsurer's currently nominated approvers are Ajit Jain and Forrest Krutter.

Ex. 4, Board Meeting Minutes (Nov. 25, 2008) (NICO465949-NICO465950). Because NICO is the reinsurer whose approval is required and Messrs. Lewis, Snover, Jain, and Krutter are all officers of NICO, the requirement of their "approval" for settlements over $1,000,000 and $5,000,000 conflicts directly with NICO's response to Interrogatory 5 that "NICO does not

approve payment under the Gerling Policies." *See* Ex. 5, NICO's Supplemental Compensation Exhibit (Mar. 1, 2013) (listing Messrs. Snover, Jain, and Krutter as officers of NICO). Further, Resolute's Steve Whitley unequivocally testified ▌

▌ Ex. 7, e-mail from S. Whitley to K. Lewis (Nov. 18, 2010 at 4:53 p.m.).

Armed with this knowledge, Mr. Lewis could not have believed in good faith that NICO's response to Interrogatory 5 was true or consistent with NICO's obligations under the Federal Rules of Civil Procedure. Claims that the definitions and terminology in Ford's discovery requests somehow altered the plain meaning of the interrogatory ignore the effect of NICO's objections and self-serving re-interpretation of Interrogatory 5. Tellingly, NICO has not presented a declaration from Mr. Lewis to refute these facts or establish a different understanding of them. Mr. Lewis's verification of NICO's answer to Interrogatory No. 5 was therefore specious and in bad faith.

### C. NICO's Tactics Unfairly Prejudiced Ford.

Ford has suffered unfair and real prejudice due to NICO's tactics. Ford has been forced to waste time filing discovery motions rather than focusing on the merits of the case. Ford has lost time and money preparing for, traveling to and conducting multiple depositions of the same witness overseas. Worse, Ford has been unable to examine witnesses regarding relevant facts that have been memorialized in documents that were the improperly withheld or provide its expert witnesses with information and materials that could affect their opinions.

NICO's conduct also threatens to delay to delay the trial of this matter and deny Ford its right to have this dispute adjudicated swiftly. It is no secret that NICO seeks to stay the trial of this matter until resolution of the arbitration against Ford. NICO first filed a motion to stay (ECF

No. 11), which was denied (ECF No. 26), and then a motion to reconsider (ECF No. 29) the order denying the stay, which was also denied (ECF No. 39). In the absence of a *de jure* stay, NICO appears intent to impose a *de facto* stay by forcing a continuance of the trial date through slow and arduous discovery practice and forcing Ford to consume time and resources on discovery motions.

While NICO may seem gracious and accommodating by offering Ford the opportunity to resume depositions of witnesses whom Ford already deposed without the benefit of the Resolute documents, NICO is actually monopolizing the time left on the discovery calendar and preventing Ford's counsel from engaging other activity necessary to prepare this matter for trial. Thus far, Ford has been forced to send its counsel across the Atlantic Ocean twice to depose the same witness and seek the Court's assistance on several discovery disputes. In essence, NICO is running Dean Smith's four-corners offense to wind down the discovery clock and prevent Ford from scoring points against NICO's witnesses. NICO has already ignored the Court's enforcement of the shot clock, and a technical foul would be appropriate at this point.

      **D.**     **NICO Failed to Protect Its Privilege.**

As impressive as NICO's document review protocols sound and as valiant as its counsel's coding of privileged documents may be, NICO has failed to act diligently to protect the privileged status of its documents. This failure is proven by repeated claw back attempts and the on-going appearance of privileged documents in NICO's document production. Without appropriate care, these documents are no longer entitled to the protections asserted.

Since the fiasco with NICO's document production on May 5, NICO's attorneys have continued to assert claw back rights over multiple documents. These claw backs have occurred in open court on May 29 and at depositions, such as the deposition of John Yacoub in London.

*See* Ex. 8, e-mail from M. Fender to T. Calabro (June 14, 2013 at 7:42 a.m.)

Moreover, NICO has failed to assert privilege over documents such as NICO4581551 and NICO456684-NICO456685. It should have been hard to miss these documents in a privilege review because they are dated in March 2013 and April 2013 – well after the start of this litigation – and originated with Kevin Lewis. One of the documents, NICO4581551, is an e-mail from Kevin Lewis to Steve Whitley dated March 22, 2013, telling Mr. Whitley to expect a call from Michael Levine of Hunton & Williams to discuss "certain issues" and instructs Mr. Whitley to give Mr. Levine "whatever support you can." Ex. 9, e-mail from K. Lewis to S. Whitley (Mar. 22, 2013 at 11:07 a.m.) This document was produced on May 5 and was not listed on NICO's privilege log.

The other is an e-mail chain that includes a missive from Mr. Lewis to recipients at Resolute, NICO, HDI-Gerling, Quinn Emmanuel, and Hunton & Williams regarding depositions in this case. *See* Ex. 10, E-mail from K. Lewis to S. Whitley et al (April 3, 2013 at 14:24). Although there is an entry on NICO's privilege log for another Kevin Lewis e-mail from the same date at NICO456918, there is no privilege log entry for NICO456684- NICO456685. Ford looks forward to additional declarations from Quinn Emmanuel and Hunton & Williams to explain how these documents were produced and not claimed as part of the claw back effort.

    **E.**    **Ford's Conduct Is Not the Basis of This Motion and Is Not Actionable.**

Lacking a defense for a pattern of disruption and deception, NICO has tried to divert and distract the Court by impugning Ford. NICO claims that Ford has failed to produce documents since 2012, not to updated Exhibit B to Interrogatory 22, and not collected Marsh records since the arbitration. NICO's gambit is absurd, for four reasons. First, Ford has produced material documents. Second, NICO or its controlled-agent Mitigate already has what it claims to be

unproduced by Ford. Third, NICO admits it has not involved the Court, thus proving the Ford production has not been found to be non-compliant. Fourth, the conduct of an adversary is never excuse when a party is under court-Order to produce documents, as NICO was on January 30.

## III. CONCLUSION

For the reasons stated above, Ford moves this Court to sanction NICO and award Ford its fees and costs incurred in obtaining this relief pursuant to Fed. R. Civ. P. 37.

Dated: June 17, 2013                                                         Respectfully Submitted,


\_\_\_/s/_____

Scott C. Oostdyk (VSB#28512)
soostdyk@mcguirewoods.com

J. Tracy Walker (VSB#31355)
twalker@mcguirewoods.com

H. Carter Redd (VSB#34392)
hredd@mcguirewoods.com

Matthew D. Fender (VSB# 76717)
mfender@mcguirewoods.com

McGuireWoods LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

*Counsel for Ford Motor Company*


## CERTIFICATE OF SERVICE

I certify that on June 17, 2013, I filed the foregoing on the Court's CM/ECF system which will cause a Notice of Electronic Filing (NEF) to be sent to the following counsel of record for National Indemnity Company:

George P. Sibley, III
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Tel: (804) 788-8262
Fax: (804) 788-8218
E-mail: gsibley@hunton.com

Michael S. Levine, Esq.
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
Tel: (703) 714-7602
Fax: (703) 918-4050
E-mail: mlevine@hunton.com

　　/s/_____

Scott C. Oostdyk (VSB#28512)
soostdyk@mcguirewoods.com

J. Tracy Walker (VSB#31355)
twalker@mcguirewoods.com

H. Carter Redd (VSB#34392)
hredd@mcguirewoods.com

Matthew D. Fender (VSB# 76717)
mfender@mcguirewoods.com

McGuireWoods LLP
One James Center
901 E. Cary St.
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

*Counsel for Ford Motor Company*

48768310_4