**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

FORD MOTOR COMPANY       )
                                   )
          Plaintiff,        )
                                   )     Civil Action No. 3:12-cv-839
          v.              )
                                   )
NATIONAL INDEMNITY COMPANY   )
                                   )
          Defendant.     )

**DEFENDANT NATIONAL INDEMNITY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
<u>LIMIT TRIAL ROLE OF SCOTT OOSTDYK, ESQ.</u>**

**Table of Contents**

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Preliminary Statement ..........................................................................................................1

Background ............................................................................................................................4

    I.   Evidence to Be Presented at Trial Regarding Mr. Oostdyk's Role and His Instructions on Behalf of Ford. ..........................................................................4

    II.  Ford's Refusal to Make Mr. Oostdyk Available for Deposition. ..................................6

    III. Ford's Intention to Prevent Kent Wilson's Testimony from Being Introduced. ..........7

Argument ...............................................................................................................................9

    I.   Mr. Oostdyk Should Be Disqualified From Serving as Ford's Counsel at Trial If Ford Attempts to Introduce Mr. Oostdyk's Written Statements Or If Mr. Wilson's Testimony Is Excluded. ..........................................................................9

        A.   The Witness-Advocate Rule ................................................................................9

        B.   Mr. Oostdyk Is a Necessary Witness Whose Testimony Would Be Prejudicial to His Client ...........................................................................................12

            1.   Mr. Oostdyk's Testimony Is Relevant. ..................................................12

            2.   Mr. Oostdyk's Testimony Is Necessary. ................................................12

            3.   Mr. Oostdyk's Testimony May Be Prejudicial to Ford. .........................13

        C.   Disqualifying Mr. Oostdyk Would Not Work Substantial Hardship on Ford...14

    II.  Mr. Oostdyk's Role as Trial Counsel Should be Substantially Limited, Even If Mr. Wilson Is Allowed to Testify and Mr. Oostdyk's Written Statements Are Excluded. ..........................................................................................................15

Conclusion ..........................................................................................................................16

## Table of Authorities

### FEDERAL CASES

*Jones v. City of Chicago*,
    610 F. Supp. 350 (N.D. Ill. 1984) .................................................................10

*Lamborn v. Dittmer*,
    873 F.2d 522 (2d Cir. 1989)..........................................................................10

*Personalized Mass Media Corp. v. Weather Channel, Inc.*,
    899 F. Supp. 239 (E.D. Va. 1995) ...................................................9, 10, 11, 12

*Sanderson v. Boddie-Noell Enterprise, Inc.*,
    227 F.R.D. 448 (E.D. Va. 2005) .....................................................................9

*United States v. Franklin*,
    177 F. Supp. 2d 459 (E.D. Va. 2001) ............................................................11

### FEDERAL STATUTES

L. R. Civ. P. 83.1(I) .......................................................................................9

### STATE STATUTES

Va. R. Prof. Conduct  3.7..........................................................9, 10, 13, 15

Va. R. Sup.Ct. pt. 6 § 2 RPC Rule 3.7, Committee Commentary .................11

### MISCELLANEOUS

*Erik G. Luna, Avoiding A "Carnival Atmosphere": Trial Court Discretion and the*
    *Advocate-Witness Rule,* 18 Whittier L. Rev. 447, 451-52 (1997) .....................15

**Preliminary Statement**

From 2010 to 2012, Mr. Oostdyk served as Ford Motor Company's primary point of contact with its ASLP insurers.  In that role, he told carriers what they would need to do to obtain more information about Ford's claims and how and when Ford would accept payment of any portion of the amounts that Ford claims it is owed.  So when carriers voiced concerns about gaps in information Ford had provided on certain claims, it was Mr. Oostdyk who instructed the carriers that they would need to file an arbitration demand and seek that information through formal discovery.  When confronted with the fact that some carriers would be willing to pay on verified and undisputed non-batch claims but would not pay on batch claims as demanded, it was Mr. Oostdyk who instructed ASLP carriers that Ford would not accept "partial payments"—i.e., payment solely on non-batch claims—of amounts that Ford contended these carriers owed.  He gave that instruction repeatedly—to Scott Friedman, who relayed the instruction to the ASLP group; to Dee Anne Nunley of Federal and Tom Drennan, one of Federal's lawyers; and to Kent Wilson, the lawyer for several ASLP carriers.  When Federal tried to make a partial payment on only non-batch claims in 2011 and 2012, it was Mr. Oostdyk who said "no" and instructed Federal to "retain" its payment.  And when HDI-Gerling offered to pay on undisputed claims, it again was Mr. Oostdyk who said no—a fact that Ford admitted in deposition.

This evidence will be central to NICO's defense in this case.  Mr. Oostdyk's written statements and the testimony of Mr. Friedman, Ms. Nunley and Mr. Wilson will be powerful evidence that rebuts Ford's contention that HDI-Gerling's filing of a demand for arbitration and cessation of payment on non-batch claims were the products of a tortious scheme.  And Mr. Oostdyk is the only witness on the Ford side who can testify as to his 2011 and 2012 interactions with HDI-Gerling and the other ASLP carriers.  By retaining Mr. Oostdyk as its lead trial

counsel and then using that tactical decision to shield him from discovery, Ford therefore will be unable to rebut NICO's evidence. *See* ECF No. 114.

But after being confronted with the consequences of its tactical decision, Ford now seeks to use Mr. Oostdyk's position as trial advocate as both a sword and a shield against NICO. Specifically, Ford will seek to introduce at trial Mr. Oostdyk's written statements—how is unclear—that, according to Ford, refute testimony to be offered by Scott Friedman and others. And Ford very well may seek to call Mr. Oostdyk as a witness at trial. When directed by the Court to answer with a "yes or a no" whether it would call Scott Kent Wilson, a lawyer for certain carriers in the group of ASLP insurers, regarding his interactions Oostdyk to as a witness, Ford responded by saying, in essence, "it depends." In particular, Ford expressly reserved all rights to call Mr. Oostdyk if it is unhappy with the deposition testimony of with Mr. Oostdyk in 2011 and 2012. And that is not all—Ford also will seek to exclude Mr. Wilson's testimony, advancing illusory arguments of prejudice based on the non-existent claims of privilege by third-parties over documents that do not actually exist.

Ford's "heads I win, tails you lose" approach to Mr. Oostdyk's role as a witness also creates a real possibility that NICO will need to call Mr. Oostdyk as a percipient witness in its own case. His own actions and his interactions with Mr. Wilson, Ms. Nunley, Tom Drennan, and Mr. Friedman of Mitigate go to the heart of NICO's defenses to Ford's claims. If Ford succeeds in introducing Mr. Oostdyk's statements in Ford's case, thus putting Mr. Oostdyk's credibility at issue, NICO may be compelled to call Mr. Oostdyk as a witness to confront him with, among other things, his serial "no partial payments" instructions. And if Ford moves to exclude Mr. Wilson's testimony regarding his conversations with Mr. Oostdyk, that likelihood is only magnified.

2

In short, Ford has aggressively moved to create a situation where no witness would be available to testify about non-privileged conversations between Mr. Oostdyk and a representative of the ASLP while Mr. Oostdyk, as trial counsel, would be free to argue the meaning of his own correspondence and refute the trial and deposition testimony of those with whom he interacted.  This is precisely the type of unseemly situation that the witness-advocate rule was designed to avoid.

NICO has filed this motion so that the Court may determine whether, and to what extent, Mr. Oostdyk can fairly serve as Ford's trial counsel under these circumstances.  If Ford will not contest the testimony concerning Mr. Oostdyk's statements that NICO intends to present at trial, then Mr. Oostdyk might be able to serve as trial advocate without limitation.  *See* Va. R. Prof. Conduct 3.7(a)(1).  Specifically, witness-advocate concerns are largely avoided if Ford concedes:

- That Ford told Mr. Friedman on multiple occasions that Ford did not want payment for some of its claims and, instead, preferred to reach a global resolution of claims issues;

- That Ford told Mr. Wilson on multiple occasions that Ford did not want payment for some of its claims and, instead, preferred to reach a global resolution of claims issues;

- That Ford told Ms. Nunley in June 2012, just a few months before this action was filed, that Federal should not make a partial payment;

- That Ford told Mr. Drennan in May 2012 that Federal should not make a partial payment;

- That Ford declined to accept a partial payment from HDI-Gerling on undisputed claims related to pre-1999 Bronco II rollovers; and

- That Ford told the ASLP carriers that if they wanted additional information concerning claims beyond what Ford already provided then the carriers would need to pursue the information in formal discovery in arbitration.

But if Ford elects to contest these points, to exclude the evidence respecting Mr. Oostdyk's "no partial payment" instruction, or to exclude the evidence concerning Ford's

3

instruction to the carriers that they would need to proceed to arbitration to obtain information

concerning Ford's claims, then the Court must limit Mr. Oostdyk's role at trial to protect NICO's

rights.  At a minimum, the Court should preclude Mr. Oostdyk from cross-examining witnesses,

like Mr. Friedman, who will testify as to Mr. Oostdyk's statements and preclude Mr. Oostdyk

from challenging these witnesses' testimony during opening statements or closing arguments.

And if Mr. Oostdyk will testify at trial, he should be disqualified outright from serving as Ford's

trial advocate.

**Background**

## I.     Evidence to Be Presented at Trial Regarding Mr. Oostdyk's Role and His Instructions on Behalf of Ford.

NICO has described for the Court some of the substantial evidence NICO will present at

trial showing that Mr. Oostdyk repeatedly instructed the insurers and their representatives (and

on two separate occasions refused to accept partial payments) that Ford would not accept

payments solely on non-batch claims.  *See* NICO's Mem. of Law in Support of Motion to

Compel Deposition of Scott Oostdyk, Esq. (ECF No. 114) at 5-9; NICO's Reply Mem. of Law in

Support of Motion to Compel Deposition of Scott Oosdyk, Esq. (ECF No. 168) at 10.  NICO

incorporates these briefs here by reference.  To summarize, the evidence shows that:



- On January 17, 2011, Mr. Oostdyk instructed Scott Friedman that Ford did not want to receive payment solely on non-batch claims.  Instead, Ford would negotiate with each carrier regarding full payment on batch and non-batch claims combined.  *See* Ex. 3, Friedman Dep. 326:25-328:23; *see also id.* at 225:17-230:14; Ex. 4, January 17, 2011 Email from S. Friedman to S. Oostdyk.

- Mr. Oostdyk repeated this instruction to Mr. Friedman multiple times throughout 2011 and 2012.  *See* Ex. 3, Friedman Dep. at 326:25-328:23.

- Mr. Oostdyk also repeated this instruction to Kent Wilson on multiple occasions. *See* Ex. 5, Feb. 2013 Email from K. Wilson to S. Oostdyk.

- Another insurer, Federal, tried to pay solely on non-batch claims in April 2011, by sending a letter to Mr. Ames noting, among other things, that Federal had been informed by Mr. Friedman that Ford had instructed carriers not to make partial payments, but that Federal was prepared to pay.  Mr. Ames never responded. *See* Ex. 6, Nunley Dep. at  60:11-61:1.

- Federal met with Mr. Oostdyk in May 2012, more than a year after Federal's April 2011 letter to Mr. Ames, and Mr. Oostdyk again confirmed that Ford did not want payment solely on non-batch claims.  *See* Ex. 6, Nunley Dep. at 66:21-67:1; 68:3-73:19.

- When Ford finally started making requests for payment of other carriers, counsel for several of those carriers, Kent Wilson, reminded Mr. Oostdyk that he had personally instructed Wilson that Ford would not accept payment solely on non-batch claims.  *See* Ex. 5, Feb. 5, 2013, Email from K. Wilson to S. Oostdyk.

This evidence is of undisputed relevance to the case.  It undercuts Ford's theory that NICO's

nonpayment on Ford's non-batch claims between March 2011 and August 2012 was the product

of a tortious scheme.



## II.  Ford's Refusal to Make Mr. Oostdyk Available for Deposition.

Notwithstanding Mr. Oostdyk's significant role as a fact witness, Ford elected not to

make Mr. Oostdyk available for deposition.  So NICO moved to compel.  Central to Ford's

opposition to NICO's motion was the assertion that NICO could obtain evidence regarding Mr.

Oostdyk's instructions from other sources.  *See* Plf. Opp. Mem. (ECF No. 146) 14-16 (claiming

that documents are a substitute for Mr. Oostdyk's testimony, as would be testimony of other

witnesses who lack personal knowledge Mr. Oostdyk's discussions with Mr. Friedman).  At oral

argument the Court cautioned Ford:

> [I]t is an unseemly business to have a lawyer's credibility at issue
> and have him trying the case. It just is. I would think twice if I
> were a client about that situation, and say, Hey, I've got a great
> witness here. I want this witness to testify. And I don't want him
> having to try the case, too. I guess that's an argument for another
> motion, I suppose, or an issue for another motion....

Ex. 9, July 12 Hr'g Tr. at 40:4-23.

The Court ultimately accepted Ford's tactical position and denied NICO's motion in

substantial part on the ground that NICO could seek the information elsewhere, including from

Mr. Wilson.  But the Court instructed Ford that, if it intended to call Mr. Oostdyk as a witness at

trial, it would need to make Mr. Oostdyk available for deposition, and that it would need to let

NICO know by July 26.  On July 26, 2013, Ford sent NICO a letter that neither stated that Ford

would be calling Mr. Oostdyk as a witness nor confirmed that it would not:

> By this letter Ford gives notice to NICO that based on state of the
> record at the close of discovery, Mr. Oostdyk will not testify at
> trial.  Given NICO's decision to depose another fact witness, its
> counsel [sic] Kent Wilson, and to do so after the close of
> discovery, Ford reserves the right to revisit all rights and remedies
> once Mr. Wilson has been deposed, and Ford can determine the
> use proposed by NICO for what could end up being inaccurate,
> false, perjurious, or other inappropriate testimony that is not now
> part of the record.

6

Ex. 10, July 26, 2013 Ltr. from M. Fender to G. Sibley.  Now, nearly a week after the Court's

deadline, NICO still does not know whether Ford plans to call Mr. Oostdyk.

### III.    Ford's Intention to Prevent Kent Wilson's Testimony from Being Introduced

As of the July 12, 2013 hearing on the Motion to Compel, NICO had obtained key

testimony from both Dee Anne Nunley and Scott Friedman and was in the process of negotiating

dates for the deposition of third-party Kent Wilson.  After the Court ordered Ford to produce its

communications with other carriers, Ford on June 14, 2013 produced emails between Mr.

Oostdyk and Mr. Wilson, where Mr. Wilson documented that Mr. Oostdyk had given him the

same "no partial payment" instruction Mr. Oostdyk gave to Scott Friedman.  NICO expects that

Mr. Wilson's testimony will completely corroborate that of Mr. Friedman and Ms. Nunley.

NICO identified Mr. Wilson as a person with relevant knowledge by supplementing its

Rule 26(a)(1) initial disclosures on June 5, and NICO began making arrangements to take his

deposition.  After conferring with him and his counsel, NICO noticed the deposition on June 19,

2013.  Ex. 12, June 19, 2013 Deposition Subpoena.  The witness, who is an out-of-state third

party asked for a telephonic deposition.  *See id.*  NICO consented, but Ford objected, citing the

need to cross-examine him in person, and then served Mr. Wilson, his firm (Wilson & Ryan),

and his clients[1] with subpoenas seeking documents, including documents reflecting

communications between Mr. Wilson and his clients concerning Mr. Wilson's communications

with Oostdyk.  Wilson and his clients served Ford with objections to the subpoenas, and Ford

apparently abandoned its effort to obtain the documents.

On July 19, NICO informed counsel for Ford that it had secured a window of availability

for Mr. Wilson's deposition during the week of July 29.  In response, Ford objected to the

---

[1] Munich Re America; CNA Financial Corp.; and Allianz Underwriters Insurance Co.

deposition and arranged for a teleconference with the Court so that it could move to quash the deposition.  At that teleconference, which occurred on July 24, 2013, Ford argued that the deposition should be quashed because Mr. Wilson was NICO's lawyer[2] and NICO had purportedly withheld his communications on the ground of privilege and that Ford, therefore, would not have an opportunity to cross-examine him.

The Court declined to quash the deposition.  But the Court indicated on the record that unless all of Mr. Wilson's written communications relating to his conversations with Mr. Oostdyk were produced so that Ford (represented by Mr. Oostdyk) had a fair opportunity cross-examine Mr, Wilson, Mr. Wilson's testimony could be excluded.  *See* July 24 Hr'g Tr. at 19:2-9. The Court memorialized its ruling in an order on July 31.  *See* ECF No. 238 (ordering that Ford's counsel "shall be entitled to inquire into any conversation or document between Mr. Wilson and his clients that relate to, or refer to" conversations between Mr. Oostdyk and Mr. Wilson in and after 2011 relating to Ford's wish not to receive rolling payments, and that documents relating to those conversations "shall be provided.")

NICO, in response to both the Court's order and the Court's ruling on Ford's Motion to Compel the Production of 55 Documents, re-reviewed the documents on its privilege log from after January 2011 involving Mr. Wilson.  None of the documents relate in any way to Mr. Oostdyk's "no partial payment" instruction to Mr. Wilson.  And Mr. Wilson's communications relating to Mr. Oostdyk's September 2010 mandate that carriers would need to arbitrate to obtain more information about Ford's claims already had been produced.

---

[2] Mr. Wilson is not, and has never been, NICO's lawyer.  He formerly represented HDI-Gerling and Resolute Management with respect to the Ford ASLP program, but that representation ended at the end of 2010.

NICO also contacted Mr. Wilson's counsel and requested that they determine whether Mr. Wilson or his clients had any documents authored by Mr. Wilson relating to the "no partial payment" conversation Mr. Wilson had with Mr. Oostdyk.  These documents, to the extent they exist, would have been responsive to subpoenas Ford declined to enforce.  But to attempt to satisfy the Court's apparent concerns, NICO asked these parties to determine whether any such documents exist and, to the extent they do, to produce them.  Mr. Wilson's lawyer has indicated that there are no such documents.

Should Ford succeed in excluding Mr. Wilson's testimony on the ground that Ford could not adequately cross-examine him, or if Ford attempts to impeach the testimony of Mr. Friedman, Ms. Nunley, or Mr, Wilson, or if Ford challenges the numerous documents demonstrating that Ford, through Mr. Oostdyk, demanded that carriers arbitrate to obtain more information about Ford's claims and sought to avoid partial payments long after March 2011, then NICO likely will be compelled to call Mr. Oostdyk as a witness at trial to testify regarding his instructions to Mr. Wilson.  *See* ECF No. 235.  The evidence will not be available from any other source.

<u>**Argument**</u>

**I.     Mr. Oostdyk Should Be Disqualified From Serving as Ford's Counsel at Trial If Ford Attempts to Introduce Mr. Oostdyk's Written Statements Or If Mr. Wilson's Testimony Is Excluded.**

**A.     The Witness-Advocate Rule**

Rule 3.7 of the Virginia Rules of Professional Conduct[3] prevents a lawyer from serving as a trial advocate when he also will be a witness.  That Rule states:

---

[3] "The ethical standards governing the practice of law in the United States District Court for the Eastern District of Virginia are defined by the Virginia Rules of Professional Conduct." *Sanderson v. Boddie-Noell Enter., Inc.*, 227 F.R.D. 448, 451 (E.D. Va. 2005) (Payne, J.) (citing L. R. Civ. P. 83.1(I)).

> (a) A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

Va. Rule Prof. Conduct 3.7.  As this Court has explained, the rule preserves the distinction between witness and advocate and thus is integral to the adversarial process:

> The rule derives from the fundamental fact that the roles of advocate and witness are inconsistent, it being the function of the advocate to argue the cause of another and the role of a witness to state facts objectively.  In recognition of this fundamental difference in the roles of witness and advocate, the rule serves as a prophylactic rule designed to protect the interests of the client, ***the adverse party***, and the institutional integrity of the legal system as a whole.

*Personalized Mass Media Corp. v. Weather Channel, Inc.*, 899 F. Supp. 239, 242 (E.D. Va. 1995) (Payne, J.) (emphasis added).

Where a party in a civil action retains a material witness as its trial counsel, the opposing party may be prejudiced at trial.  Comment [2] to Rule 3.7 explains:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate witness should be taken as proof or as an analysis of the proof.

The risk of jury confusion and the resulting prejudice to the opposing party is substantial:

> The danger … exists that the trier of fact may confuse the roles of the attorney as witness and attorney as advocate.  If the trier, especially a jury, grants undue weight to the attorney's testimony, the opponent may be unfairly disadvantaged.  An attorney-witness will also be in a position to vouch for his own credibility in

10

> summing up to the jury.  This possibility is also unfair to the opponent.

*Jones v. City of Chicago*, 610 F. Supp. 350, 357 (N.D. Ill. 1984).

Accordingly, a lawyer can be disqualified from serving as an advocate at trial if his testimony is "(1) relevant; (2) necessary; and (3) is or may be prejudicial to the client whose lawyer is to be called as a witness by the adverse party." *Personalized Mass Media*, 899 F. Supp. at 243.  Disqualification, of course, must be balanced against "the fundamental principle that a party ought to be represented by its counsel of choice if that is at all possible." *Personalized Mass Media*, 899 F. Supp. at 242.  Accordingly, a party moving to disqualify an opposing party's counsel "bears the substantial burden of demonstrating specifically how and as to what issues in the action the prejudice exists or is likely to occur." *Id.* at 243 (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).  If the party seeking disqualification meets its burden, the opposing party then bears the burden of showing that one of the three exceptions to Rule 3.7 applies—i.e., that the testimony is uncontested, relates to the value of legal services, or that disqualification would work "substantial hardship" on the client. *Id.* at 244. [4]

---

[4] This Court decided *Personalized Mass Media* under the Ethical Canons and Disciplinary Rules, but the test is not materially different under the Rules of Professional Conduct. *See United States v. Franklin*, 177 F. Supp. 2d 459, 466 n. 4 (E.D. Va. 2001) (explaining that, "[t]he Committee, in its Commentary, concluded that the test in the ABA Model Rule, i.e., whether a lawyer 'is likely to be a necessary witness,' is more instructive than that in DR 5–101(B), i.e., whether the lawyer 'knows or it is obvious that he ... ought to be called as a witness.' Va. R. Sup.Ct. pt. 6 § 2 RPC Rule 3.7, Committee Commentary. The Court understands this notation to clarify that the extent of the probability that the lawyer will be a witness need not reach an absolute.")

**B.** **Mr. Oostdyk Is a Necessary Witness Whose Testimony Would Be Prejudicial to His Client.**

**1.** **Mr. Oostdyk's Testimony Is Relevant.**

There is no dispute that the testimony Mr. Oostdyk would offer concerning his conversations with Scott Friedman, Dee Anne Nunley and Kent Wilson is relevant. Ford's central contention in the case is that NICO should have made a partial payment solely on the non-batch claims at some point in 2011. During this same time period, Mr. Oostdyk was telling these witnesses that Ford would not accept such payments and in fact declined to accept partial payments from some of them. There is no question the testimony is relevant—at a minimum, it undermines Ford's contention that NICO/Resolute's nonpayment of non-batch claims was the product of an intent to harm Ford.

**2.** **Mr. Oostdyk's Testimony Is Necessary.**

If Ford succeeds in disqualifying Mr. Wilson from testifying, the necessity of Mr. Oostdyk's testimony at trial is unquestionable. If Mr. Wilson is precluded from testifying for any reason, Mr. Oostdyk is the only person who can testify regarding the conversations documented in Mr. Wilson's emails to Mr. Oostdyk (that Mr. Oostdyk has never rebutted) and in other documents.

Mr. Oostdyk's testimony may be necessary even if Mr. Wilson *does* testify. Ford intends to introduce at trial emails from Mr. Oostdyk himself that, according to Ford, repudiate the no partial payment instruction. Specifically, Ford intends to introduce an email drafted by its lead trial counsel to rebut Mr. Friedman's testimony regarding Mr. Oostdyk's January 17 no partial payment instruction. Ford's Mem. in Support of Mot. for Partial Summary J. (Dkt. No. 233) at 10-11. As the Court itself has observed, it is not immediately apparent how Ford can introduce that email into evidence. *See* ECF No. 217 at 6-7. Mr. Oostdyk presumably will need to testify

12

as to its substance.  But if Ford is able to introduce that evidence without calling Mr. Oostdyk as

a witness, NICO may then be compelled to call Mr. Oostdyk so that he can be cross-examined

about that email.  Ford cannot be allowed to introduce the out-of-court statements of its trial

lawyer to rebut a key factual point and then shield that lawyer from meaningful cross-

examination.

Ford may argue, as it did in opposing the motion to compel Mr. Oostdyk's deposition,

that the prejudice to NICO is minimal because NICO can obtain this testimony from other

witnesses.  This Court considered and rejected precisely this argument in *Personalized Mass

Media*.  *See* 899 F. Supp. at 243.  There, the party opposing disqualification argued that the

testimony in question could be obtained from a non-lawyer who was involved in the underlying

events as to which the lawyer had personal knowledge.  The Court noted that this argument

"misse[d] the mark," because the lawyer's own conduct was at issue.  *Id.*  The other witnesses,

therefore, were not privy to the lawyer's "unique knowledge" regarding the rationale for his

conduct.  *Id.*

The Court's reasoning in *Personalized Mass Media* applies here with equal force.  Only

Scott Oostdyk can testify as to what he was thinking when he instructed Scott Friedman that

Ford did not want rolling payments.  Only Scott Oostdyk can explain why he never responded to

Federal's offer to make a partial payment in April 2011.  And only Scott Oostdyk can explain

why he, as late as June 2012, was instructing a carrier (that like HDI-Gerling did not intend to

pay on batch claims) that Ford would not accept payment solely on non-batch claims.

### 3.    Mr. Oostdyk's Testimony May Be Prejudicial to Ford.

Mr. Oostdyk's testimony would almost certainly be prejudicial to Ford.  At a minimum,

Mr. Oostdyk would be confronted with a series of statements that would undermine his client's

trial position that Ford wanted to be paid immediately on non-batch claims following the March

2011 Mitigate audit report.  For example, why did Mr. Oostdyk not respond to Federal's offer to

pay Ford solely on non-batch claims in 2011?  And why did Mr. Oostdyk not accept Federal's

attempt to pay in June 2012?  And why did Ford not accept HDI-Gerling's offer to pay on some

of the very claims Ford has placed at issue in this litigation?  And why, if Ford wanted

immediate payment, did Mr. Oostdyk fail to send payment requests to seven of the insurers until

February 2013—months after this litigation began?  NICO has been precluded from deposing

Mr. Oostdyk, so we do not know what his answers to these questions might be.  But confronting

Mr. Oostdyk with this evidence will certainly diminish the credibility of Ford's position as to

whether and when it would accept payment solely on non-batch claims.

### C.      Disqualifying Mr. Oostdyk Would Not Work Substantial Hardship on Ford.

Ford would not experience substantial hardship if Mr. Oostdyk is disqualified as its trial

counsel.

To begin, McGuireWoods would still be able to serve as Ford's trial counsel—only Mr.

Oostdyk would be disqualified.  Va. Rule  Prof. Conduct 3.7(c).  Four other lawyers at

McGuireWoods are counsel of record in this case, including Tracy Walker and Carter Redd, two

trial lawyers with substantial experience.

Ford was well aware of Mr. Oostdyk's role in the events giving rise to this lawsuit when

it retained Mr. Oostdyk as its counsel in this case.  Mr. Oostdyk surely advised his client of the

potential witness-advocate issue before taking this representation.  Even if Ford did not

recognize the potential for disqualification before it hired Mr. Oostdyk, Ford has been aware

since May that NICO considered Mr. Oostdyk to be a necessary witness.  *See* Ex. 11, May 6

Hr'g Tr. at 8:7 -9:10.  And NICO's motion to compel Mr. Oostdyk's deposition expressly noted

that Mr. Oostdyk's role could lead to disqualification.  *See* ECF No. 114 at 16-17.  If any

ambiguity on this point remained, the Court resolved it at the July 12 hearing by observing that Mr. Oostdyk's role as a fact witness could lead to his disqualification.

In sum, Ford has several lawyers other than Mr. Oostdyk already involved in the case that are able to advocate for Ford at trial.  And Ford has ample opportunity to make arrangements for someone other than Mr. Oostdyk to serve as trial counsel.

## II.    Mr. Oostdyk's Role as Trial Counsel Should be Substantially Limited, Even If Mr. Wilson Is Allowed to Testify and Mr. Oostdyk's Written Statements Are Excluded.

Even if Mr. Oostdyk's written statements regarding the no partial payments instruction are excluded and Mr. Wilson's testimony is admitted so that disqualification is not required, Mr. Oostdyk's role as an advocate at trial must be limited to avoid substantial prejudice to NICO.

First, Mr. Oostdyk must be precluded from cross-examining any witness who testifies concerning Mr. Oostdyk's instructions regarding the timing of payment on non-batch claims. Any attempt by Mr. Oostdyk to cross-examine witnesses concerning those witnesses' conversations with Mr. Oostdyk will create the same risk of juror confusion that animates the witness-advocate rule.

Second, Mr. Oostdyk must be precluded from advocating at any point during the trial, in particular during opening statements or closing arguments, that Ford wanted immediate payment on non-batch claims.  The jury will hear from NICO's witnesses that Mr. Oostdyk told them that Ford did not want payment on only non-batch claims.  If Mr. Oostdyk argues that Ford *did* want such payments, there is substantial risk of juror confusion—is he testifying or advocating?   The jury cannot be presumed to appreciate the difference.

Finally, Mr. Oostdyk must be precluded from advocating at any point during the trial, in particular during opening statements or closing arguments, with respect to the credibility of Mr. Friedman, Ms. Nunley or Mr. Wilson.  It would be entirely improper for Mr. Oostdyk to suggest

that these witnesses are lying about what he told them, when he has refused to testify himself and subject his own credibility to examination.  In that scenario, Mr. Oostdyk would be leveraging his unchallenged credibility as an officer of the Court against that of individuals who, in their role as witnesses, will have their credibility challenged.  *See, e.g.,* Comment 2 to Va. R. Prof. Conduct 3.7 ("A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate--witness should be taken as proof or as an analysis of the proof."); Erik G. Luna, Avoiding A "Carnival Atmosphere": Trial Court Discretion and the Advocate-Witness Rule, 18 Whittier L. Rev. 447, 451-52 (1997) ("For instance, the rule preserves 'the distinction between advocacy and evidence,' and maintains "the integrity of the advocate's role as an independent and objective proponent of rational argument.' Moreover, it shields the already maligned profession of legal advocacy from further derision, suspicion, and cynicism.")

## Conclusion

Ford chose to retain as its counsel a key witness in the case.  That decision creates a substantial risk of prejudice to NICO.  The Court should act to protect NICO from that prejudice. Respectfully submitted,

Dated:  August 1, 2013                    /s/ George P. Sibley, III

George P. Sibley, III (VSB No. 48773)
gsibley@hunton.com
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200

Walter J. Andrews (VSB No. 46031)
wandrews@hunton.com
Michael S. Levine (VSB No. 48013)
mlevine@hunton.com
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
(703) 714-7400

Jane M. Byrne (*pro hac vice*)
janebyrne@quinnemanuel.com
Andrew M. Berdon (*pro hac vice*)
andrewberdon@quinnemanuel.com
Corey Worcester (*pro hac vice*)
coreyworcester@quinnemanuel.com
Toji Calabro (*pro hac vice*)
tojicalabro@quinnemanuel.com
Brad Rosen (*pro hac vice*)
bradrosen@quinnemanuel.com
Renita Sharma (*pro hac vice*)
renitasharma@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant*
*National Indemnity Company*

17

## CERTIFICATE OF SERVICE

I certify that on August 1, 2013, I caused a true and correct copy of the foregoing to be

filed on the Court's CM/ECF system and served a true and correct unredacted copy of the

foregoing *by hand* on the following counsel for Ford Motor Company:

> Scott C. Oostdyk, Esq.
> J. Tracy Walker, Esq.
> H. Carter Redd, Esq.
> Matthew D. Fender, Esq.
> MCGUIREWOODS LLP
> One James Center
> 901 E. Cary Street
> Richmond, Virginia 23219

> /s/ George P. Sibley, III
> ———————————————
> George P. Sibley, III (VSB No. 48773)
> gsibley@hunton.com
> HUNTON & WILLIAMS LLP
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Richmond, Virginia 23219-4074
> (804) 788-8200